404 F.2d 758
 160 U.S.P.Q. 4
 INDEPENDENT NEWS CO., Inc., National Comics Publications,
Inc., Superman, Inc.
v.
Harry WILLIAMS, Independent News Co., Inc., Appellant in No.
17,098, National Comics Publications, Inc.,
Appellant in No. 17,099, Superman, Inc.,
Appellant in No. 17,100.
 Nos. 17098-17100.
 United States Court of Appeals Third Circuit.
 Argued Oct. 25, 1968.
Decided Dec. 4, 1968.
 
 K. Robert Conrad, Pepper, Hamilton & Sheetz, philadelphia, Pa., for appellants; (Gerard J. Carpency, Philadelphia, Pa., on the brief).
 William R. Pomerantz, Pomerantz & Lacko, Philadelphia, Pa., for appellee.
 Before HASTIE, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs appeal the dismissal of their complaint by the district court after final hearing.
 
 
 2
 Plaintiffs' five count complaint seeking an injunction and damages was filed in 1960. Plaintiffs, Superman, Inc., and National Comics Publications, Inc. ('National') own the copyright and trademark, and are the publishers of, inter alia, certain comic books. Plaintiff, Independent News Co., Inc. ('Independent') is the sole and exclusive distributor of such comic books. Defendant, Harry Williams, is a Philadelphia distributor of second-hand books and magazines. We turn to the factual situation which gave rise to this lawsuit.
 
 
 3
 Plaintiffs' complaint alleged that comic books published by National were distributed by its wholly owned subsidiary, Independent, to wholesalers, pursuant to a contract, and they, in turn, distributed to retailers. At the end of the sales period, all the unsold comic books were returned by the retailer to the wholesaler for full credit. The wholesaler, under the terms of its contract with Independent, returned to it only the cover of the comic or a part thereof, unless otherwise directed, and received full credit therefor. The wholesaler was obligated to '* * * destroy or mutilate the remaining portions thereof so as to render them unsalable as publications.' He further agreed '* * * that such destroyed or mutilated portions of return copies shall be disposed of or sold for no other purpose than waste paper, and that he will obtain a written commitment from the purchasers of such destroyed or mutilated return copies that the same will be used only for waste and will not be resold.' Plaintiffs' complaint further alleged that defendant was found in 1960 to be in possession of a substantial number of plaintiffs' coverless comic books, was selling them in competition with plaintiffs' covered comic books, and was not an authorized distributor or wholesaler of any of the plaintiffs' comics.
 
 
 4
 Plaintiffs first sought a preliminary injunction on six theories: conversion of the literary property in the comics, trademark infringement, copyright infringement, unfair competition, sales in violation of the legend appearing on each magazine, and an invasion of the right of privacy. The district court, in rejecting all six theories, filed extensive and detailed findings of fact and conclusions of law and denied the motion for preliminary injunction. 184 F.Supp. 877 (E.D.Pa.1960). This court affirmed, 293 F.2d 510 (1961).
 
 
 5
 The case lay dormant for almost seven years. It then came on for final hearing, apparently solely on the count of the complaint charging a conversion of the literary property in the comic books. After final hearing the district court made supplemental findings of fact and dismissed the complaint, but retained jurisdiction to deal with any conduct by defendant which might require injunctive relief, such as knowingly encouraging wholesalers and/or waste dealers to violate their contractual obligation to plaintiffs.
 
 
 6
 In connection with its decision denying a preliminary injunction the district court had made the following findings:
 
 
 7
 '5. The defendant has never purchased returned copies, either coverless copies or covered copies, of comic books from any wholesaler under contract with plaintiff-distributor. '6. The defendant has obtained his comics primarily from wastepaper dealers. '7. There is no evidence that the defendant had any knowledge that any of the wastepaper dealers from whom he purchased were obligated to sell their coverless comics as wastepaper only. '8. There is no evidence that any of the wastepaper dealers from whom the defendant purchased coverless comics had, in fact, any contractual obligation to use such comics as wastepaper only.'
 
 
 8
 The district court concluded, as did this court on the preliminary injunction appeal, that under these facts the defendant was not a converter but, on the contrary, obtained a complete right to the comic books. Shortly thereafter, in an attempt to correct these deficiencies in their case, the plaintiffs, as the district court found after final hearing in 1967, gave notice of the contractual restrictions to all wastepaper dealers known to be purchasing the remains of the plaintiffs' cover-removed comic books from plaintiffs' wholesalers. The district court found further that defendant was aware since the 1960 hearing of the restrictions on use of the comic books. Plaintiffs contended, after final hearing, that these 'notice' facts justified permanent injunctive relief. However, the district court made additional material findings which took into account defendant's change of source since the 1960 hearing. The district court found:
 
 
 9
 '3. There is no evidence that the defendant has purchased any of the plaintiffs' cover-removed comics from wastepaper dealers or wholesalers, or solicited such purchases for several years.'
 
 
 10
 The district court did find that a small number of plaintiffs' cover-removed books are still obtained when defendant purchases in bulk, but the court further found that it would be 'difficult, unduly burdensome and not economically feasible' to require defendant to eliminate them. We think, contrary to plaintiffs' contention, that none of these findings may be upset as being 'clearly erroneous.'But plaintiffs say there is no reason to assume on this record that defendant will not resume the practice in the future. They point out that defendant apparently withdrew because so many got in the business that it became unprofitable and because defendant's sources had 'dried up' by virtue of the notice given by plaintiffs, and not because he desired or intended to honor the contract provisions when he received notice of them in 1960. The truth of plaintiffs' allegations as to the reasons for defendant's withdrawal notwithstanding, it does not follow that plaintiffs are entitled to injunctive relief. Where an injunction is sought against a practice which has already been stopped, the trial court's discretion in granting or denying it is necessarily broad, and it may consider many factors, such as the likelihood of the repetition. U.S. v. Article of Drug, etc., 362 F.2d 923, 928 (3rd Cir. 1966). While it did not make any specific finding as to the bona fides of defendant's future intent with respect to resuming the complained of practice, the district court did find that defendant's sources have dried up as a result of plaintiffs' effective policing of their contracts and that the complained of practice has been discontinued for several years. It is a reasonable inference that the complained of practice cannot be resumed so long as plaintiffs continue policing the contracts. Therefore the likelihood of defendant's being in a position, even if he so desired, to resume the practice is minimal at best, and we think that, in these circumstances, the district court was acting well within its prescribed discretionary limitations in refusing injunctive relief. U.S., v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1952); U.S. v. Article of Drug, etc., supra.
 
 
 11
 In reaching the conclusion that the district court correctly decided that plaintiffs were not entitled to an injunction on the conversion count, we have assumed without deciding that the contractual provision in question can be validly enforced against a party not in privity but with knowledge thereof.
 
 
 12
 Finally, we note that while the district court dismissed the complaint it purported to retain jurisdiction to deal with any conscious action by defendant 'to encourage others to violate their contracts with the plaintiffs.' We think this purported reservation goes to a claim which, if pleaded, which we doubt, was not decided by the district court, viz., inducing breach of contract. We therefore think the provision in the order reserving jurisdiction was a nullity.
 
 
 13
 We therefore affirm the judgment of the district court dismissing the complaint but without the provision reserving jurisdiction.