Leo ROSEN, Utility Co-Workers Association and Morgan Sweeney, Appellants,

v.

PUBLIC SERVICE ELECTRIC AND GAS COMPANY.

No. 17286.

United States Court of Appeals Third Circuit.

Argued Dec. 19, 1968.

Decided April 1, 1969.

George Duggan, Parsonnet, Parsonnet & Duggan, Newark, N. J., for appellants.

Luke A. Kiernan, Jr., Newark, N. J., for appellee.

Daniel Steiner, Gen. Counsel, Russell Specter, Asst. Gen. Counsel, Lewis Collens, Atty., Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

This appeal is from an order of the district court granting appellee's motion for summary judgment on the ground that the court lacked jurisdiction over appellants' suit which had been brought under the portion of Title VII of the Civil Rights Act of 1964 prohibiting discrimination on account of sex.[1]

The basis for granting the motion was twofold. First, the court was of the opinion that because the alleged unfair employment practice, discrimination in pension rights on the basis of sex, had been rectified by a collective bargaining agreement negotiated subsequent to proceedings before the Equal Employment Opportunity Commission (EEOC) and the filing of the suit, the issues raised by the complaint had become moot. Secondly in dealing with an amendment to the appellants' complaint, which alleged that the appellee-company was still discriminating on account of sex in the pension arrangement under the new collective bargaining agreement, the court concluded that because the latter contention had never been the subject matter of a charge filed with the EEOC,[2] the court lacked jurisdiction.[3]

The appellants, Rosen, Sweeney and Utility Co-Workers Association, a certified bargaining representative for about 1,800 of the 15,000 employees of appellee, Public Service Electric and Gas Company, filed charges in 1965[4] with the EEOC alleging that appellee was committing an unlawful employment practice within the meaning of Title VII of the Civil Rights Act of 1964 by maintaining a pension plan that discriminated on the basis of sex because it permitted retirement at different ages and length of service for men and women.[5]

Under the original pension plan male employees could retire at 65 with 25 years of service, with mandatory retirement at age 70. Female employees could retire at age 60 with 20 years' service and retirement was mandatory at age 65.

1. Section 703(a) (1), 42 U.S.C.A. § 2000e–2.

2. As will appear later, a charge against the revised pension plan had in fact been filed with the EEOC, but had not been called to the attention of the court prior to its decision. However, authority to file suit on this later charge had not been officially granted by the EEOC prior to the date of the amendment of the complaint or the lower court's decision. See note 15, *infra*.

3. Section 706(e), 42 U.S.C.A. § 2000e–5(e). For the conditions precedent to the filing of a civil action, see note 11, *infra*.

4. After the initial court suit was instituted in 1966 about 35 other employees filed charges with the EEOC. The additional charges were consolidated by the Commission with those filed in 1965. Appendix (App.) 80a–85a.

5. Discrimination was also claimed in a job assignment provision of the collective bargaining agreement between the parties which provided that,

If a male employee who is 60 years of age or over, or a female employee who is 55 years of age or over, is assigned to a lower classification not for incapacity, but because of the elimination of his [sic] job, his existing rate shall not be lowered by virtue of the assignment to a lower-rated job.

This provision was eliminated in the May 1, 1967 revision of the collective bargaining agreement, App. 60a, and appears to be no longer in issue.

The plan also provided for early retirement for male employees at the age of 60, but before attaining the age of 65, upon completion of 30 years of service. Male employees taking early retirement had their pension benefits reduced by a specified rate.[6]

According to appellants, a male employee taking early retirement at age 60, after 30 years' service, would receive a substantially lower pension than a female employee retiring at the same age, with the same length of service, assuming the same average annual salary.[7]

After the charges were filed with the EEOC, and following an investigation, the Commission issued a decision, dated January 26, 1966, finding reasonable cause to believe that the pension plan violated Title VII.[8] By letter dated February 9, 1966, the Director of Compliance of the EEOC informed appellant Rosen that such reasonable cause had been found, and that the Commission would attempt to eliminate the practice by conciliation.[9] By another letter, also dated February 9, 1966, Mr. Rosen was advised by the Director of Compliance that due to the heavy workload of the Commission, it had not been possible to undertake or to conclude the conciliation efforts, but that conciliation would be undertaken and continued.[10]

---

6. The relevant sections of the pension plan (established in 1911 according to appellee and in effect up to the time of the May 1, 1967 revision), which formed the basis of the initial complaint, were as follows:

   Section 3. Each male employee may at his option retire at age sixty-five or thereafter upon completion of twenty-five years of service, and must retire at age seventy. Each female employee may at her option retire at age sixty or thereafter upon completion of twenty years of service, and must retire at age sixty-five.

   Section 4. Each employee who retires under the provisions of this Pension Plan relating to normal retirement for age shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual wage or salary of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service.

   Section 5. Each male employee may at his option retire at age sixty or thereafter but before attainment of age sixty-five upon completion of thirty years of service.

   Section 6. Each male employee who retires under the provisions of this Pension Plan relating to early retirement shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual wage or salary of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service, [and reduced by one-half of 1% for each month that such employee is less than age sixty-five at the time of his retirement.] (App. 2a.)

   The bracketed portion of Section 6 was modified prior to the filing of the initial suit to provide that,

   An employee who becomes eligible for early retirement under the present early retirement provisions of the Pension Plan and is sixty-two years old but less than age sixty-five will have his pension reduced by one-quarter of 1% for each month that he is less than age sixty-five at the time of retirement. The present reduction is one-half of 1% per month for this span of years.

   An employee eligible for early retirement under present provisions who is sixty years old but less than age sixty-two will have his pension reduced by one-quarter of 1% for each of the thirty-six months below age sixty-five and one-half of 1% for each month that he is below age sixty-two at the time of retirement. (App. 56a.)

7. Appellants' brief, p. 3.

8. App. 13a. While the discrimination found was generally against male employees, the Commission also said that,

   Female employees are disadvantaged by the discriminatory operation of the pension plan in that it is compulsory that they retire at age 65 even though some female employees who may be able and physically desirous of working five additional years would not be permitted to do so, * * *

   It should be noted that appellant-union represents both male and female employees.

9. App. 11a.

10. App. 12a.

Mr. Rosen was further notified that under Section 706(e) of Title VII of the Civil Rights Act of 1964, he had the right to bring suit in the district court within thirty days after the receipt of the letter. Suit was instituted on March 9, 1966, with Rosen, Sweeney and the union named as plaintiffs.[11]

During the pendency of the suit, the union and the appellee-company negotiated a new collective bargaining agreement effective May 1, 1967, which, *inter alia,* modified the pension plan by erasing the differences in the optional and mandatory retirement ages for men and women, thus apparently eliminating the predicate of appellants' initial complaint. All employees were permitted to retire at 65, with compulsory retirement at 70.

The modified pension plan also provided for early retirement for all employees at age 60, on a reduced pension, after 20 years of service. Female employees electing early retirement would not suffer any reduction in benefits on account of service prior to May 1, 1967.[12]

11. There is conflicting evidence in the record as to whether conciliation efforts had been undertaken before the EEOC's letter authorizing suit was sent and before and after suit was filed. (App. 49a, 50a, 69a, 71a, 76a–79a.) In view of recent decisions in a number of circuits, it appears that, at least as of the time this suit was initially brought, actual efforts at conciliation by the EEOC were not a prerequisite to the filing of a civil action under Title VII so long as a charge had been filed with the Commission and the statutory notice had been received from the EEOC that it had been unable to obtain voluntary compliance. Dent v. St. Louis-San Francisco Railway Company, 406 F.2d 399 (5th Cir. 1969) ; Johnson v. Seaboard Air Line R.R. Co., 405 F.2d 645 (4th Cir. 1968), cert. denied sub nom. Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969) ; Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968), a case involving alleged discrimination in hiring on account of sex.

It should be added that on November 4, 1966, the EEOC issued the following regulation :

§ 1601.25a Processing of cases ; when notice issues under § 1601.25.

(a) The time for processing all cases is extended to 60 days except insofar as proceedings may be earlier terminated pursuant to § 1601.19.

(b) Notwithstanding the provisions of paragraph (a) of this section, the Commission shall not issue a notice pursuant to § 1601.19 or, where a reasonable cause has been found, prior to efforts at conciliation with respondent, except that the charging party or the respondent may upon the expiration of 60 days after the filing of the charge or any time thereafter demand in writing that such notice issue, and the Commission shall promptly issue such notice to all parties.

(c) Issuance of notice pursuant to § 1601.25 does not terminate the Commission's jurisdiction of the proceeding, and the case shall continue to be processed. 29 C.F.R. § 1601.25a.

Whether this regulation can be construed in the context of Title VII to require actual conciliation efforts as a condition precedent to a court action, we need not decide. As was the case with the initial complaint here, the *Dent, Johnson* and *Choate* cases all involved suits brought prior to November 1966. In *Dent,* the court said :

It may be that this [November 4, 1966] regulation will generally put an end to cases in the posture of that here decided. 406 F.2d at 403.

12. In explanation of this provision, appellee stated in its brief, p. 9, that this
* * * does no more than allow a credit to female employees for their years of service prior to the date of the revision, May 1, 1967, because the minimum retirement age for women alone was raised by negotiations from 60 to 65 years of age. As of May 1, 1967, no credit is allowed to female employees for service rendered after the date of the revision. Since the minimum retirement age for male employees was not raised, the prior service credit for women was nothing other than a recognition by the defendant and the Union of an accrued contractual right for pension purposes, particularly in light of Article XVII of the labor agreement * * *
which prohibits the company from "diminish[ing] any of the benefits provided under said [pension] plan * * *"

No similar provision was made for male employees electing early retirement.[13]

Following the adoption of the new collective bargaining agreement, the district court, on December 21, 1967, orally granted leave to appellants at pretrial conference "to file an amended" complaint to allege that the modified pension plan also violated Title VII of the Act. (App. 64a).

While we cannot find in the record that an amendment to the original complaint, or an amended complaint, was actually filed, the parties and the court proceeded in the action further as if amendment had been accomplished. For example, in its motion for summary judgment, appellee lists as one of its grounds:

3. The *revised* negotiated Pension Plan does not discriminate within the purview of Title VII of the Civil Rights Act of 1964. (Emphasis added). (App. 68a).

Likewise, in its briefs to this court, appellee refers to the "oral amendment" of the complaint at the pretrial conference. (Main brief, p. 2; reply brief, p. 2.).

In the oral opinion rendered by the court below, the judge stated:

I consider that I am without jurisdiction at this particular time to grant the relief sought by way of *the amendments to the pleadings* set forth in the pretrial order [sic]. (Emphasis added). (App. 110a).

Thus in our disposition of this appeal we will treat the complaint as if an amendment had been filed.

On March 19, 1968, the district court granted appellee's motion for summary judgment.[14] The court was of the opinion that the modification of the pension plan rendered the original complaint moot. Summary judgment was granted as to the amendment to the complaint on the ground that no charges had been filed with the EEOC alleging that the modified pension plan constituted an unfair employment practice;[15] hence, the administrative remedies under the 1964 Act had not been exhausted.[16]

---

13. According to appellants, this provision was also discriminatory in the following fashion:

Thus, a female with thirty years' service, with an average salary of $10,000 per year, had pension credits of $3,000 per year, on May 1, 1967. If she retired on May 1, 1968, at age 60, she would have had an additional one year's service or an additional $100 credit. The $100 would be reduced by ¼ of 1% for twelve months, or a total of 3%, or $3, for a net of $97. Her pension would therefore be $3,097 per year, as of May 1, 1968.

On the other hand a male employee, who retired on May 1, 1968, under exactly the same circumstances, would receive an annual pension of $3,100 less 21%, or $651, for a net pension of $2,449. (Appellants' brief, p. 5.)

Putting it another way, appellants contended that:

In 1968, a female may retire at age 60, on a pension reduced by approximately .01% [this should probably be .1%]; a male's pension is reduced by 21%. (Brief, p. 15.)

14. App. 114a, 115a.

15. For reasons which are not entirely clear, the court below was not apprised by appellants that they had already filed further charges with the EEOC challenging the amended pension plan, and evidently appellee was also unaware of it at this time. The new charge had actually been filed sometime in July or August, *1967*. On August 22, *1968*, in accord with appellants' request (see EEOC brief, p. 3), the Commission notified appellants, pursuant to 29 C.F.R. § 1601.25 (b), that they had thirty days in which to institute suit.

On September 20, 1968, appellants filed a separate complaint in the district court, at Civil Docket No. 955—1968, alleging that the modified pension plan violated Title VII of the Act by discriminating on the basis of sex. That suit is still pending. According to this new complaint, a copy of which was supplied to this court, the EEOC has informed the parties that its investigation of the new charge would be "suspended" pending the decision of this court in the instant appeal.

16. In their brief, p. 11, appellants argue strenuously that "it is not necessary * * * to file new charges [with the EEOC] because subsequent pension plan modifications do not correct the fault which is the basis for the original charge."

On this appeal the appellants and the EEOC, appearing as amicus curiae, contend that the original complaint was not mooted by the May 1, 1967, revision in the pension plan because of the possibility that some employees may have suffered money damages before the change was made, and because the district court had failed to determine whether injunctive relief was necessary to protect the public interest against the alleged continuing discrimination by appellee on the basis of sex. The EEOC argues that the policy expressed in Title VII will be frustrated if parties-defendant in a Title VII proceeding are permitted "to place plaintiffs on an administrative treadmill by compelling litigants to go back to the Commission every time there is an alleged change in a discriminatory practice." [17]

We find merit in the first part of appellants' argument, i. e., the possibility of some of the employees of the appellee-company having suffered harm before the May 1, 1967 pension plan modification. *See* Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).[18] Accordingly, insofar as the original complaint is concerned, the case will be remanded for a determination as to whether any of the named appellants, and any other male members of the union,[19] may have retired between the date of the initial 1965 charges before the EEOC and the May 1, 1967 change, and thus may have been harmed by the alleged discrimination in the pension benefit formula.[20] Such a finding, of course, would require the court to rule on whether the original pension plan,

17. From EEOC's brief, p. 7.

The collective bargaining agreement evidently allows the appellee-company to make unilateral changes in the pension plan so long as such changes do not decrease the available benefits. The Commission and appellants envisage the possibility of the company making step-by-step decreases in any alleged inequality between male and female employees each time suit is brought, following the filing of charges with the Commission and the Commission's inability to obtain voluntary compliance. Appellee-company rejects this analysis of the collective bargaining agreement. (Appellee's reply brief, p. 8.)

18. We rely on *Jenkins* only in support of the right to claim monetary damages for harm prior to the elimination of the discriminatory practice. For the reasons subsequently given, we do not follow *Jenkins* as to its approval of injunctive relief.

19. Because, as previously stated, a number of other members of the union filed charges of discrimination with the EEOC, which the Commission by agreement with appellee (App. 85a) consolidated with the prior charges for purposes of investigation, and because of the apparent right of the union to bring this action on behalf of its members, International Chemical Workers Union v. Planters Manufacturing Co., 259 F.Supp. 365 (N.D.Miss.

1966), we believe that the court may consider possible harm not only to the named appellants but also to other members of the union. In its decision of January 26, 1966, App. 13a, the EEOC said that the charge filed by the union was "on behalf of all male employees as the aggrieved parties." Also, at pretrial conference, counsel for appellants stated "that this involves really a class action that is representative of a tremendous number of people in the Public Service Company, all of whom are involved in this one particular pension plan." App. 65a.

It should be noted, however, that appellee asserted below that the "suit is not a proper class action," App. 68a, and that the union is not an aggrieved person under Title VII, App. 20a. We do not decide the issue conclusively at this time but leave it for the initial determination of the district court if the matter is raised. *Cf.* Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

20. The original complaint filed by appellants sufficiently contemplates possible monetary damages as the prayer in each of the three causes of action set forth asks "for such other and further relief as may be deemed just and proper by the court." We recognize appellants did not press this point below as they denied the case was moot. This does not prevent consideration of damages on remand.

prior to its modification, violated Title VII of the Civil Rights Act of 1964.[21]

If the district court does not find any party entitled to the kind of relief above described for harm caused by alleged discrimination prior to the May 1, 1967 pension plan revision, then we agree with the appellee that the issues raised in the *original* complaint are moot. We recognize that the complaint specifically requested injunctive relief, and we have studied carefully the position of the EEOC that the strong policy behind the Civil Rights Act of 1964 would normally support the grant of an injunction to make certain that an employer who has voluntarily stopped discriminatory practices continues to hew to the proper course.

As the appellee points out, and as is implicit in the cases upon which the EEOC relies, *e. g.*, Jenkins v. United Gas Corp., *supra,* this kind of injunctive relief is particularly appropriate in the sensitive area of racial discrimination where the Commission and the courts should make sure that once the formal proceedings have ended the ugly face of bias does not reappear. But this is not such a case. We do not make the distinction on the basis that discrimination on account of sex is any less reprehensible or any less protected than discrimination because of race. We make the distinction because here we have a written modification of a pension plan, embodied in a collective bargaining agreement, which excised the age differentials in retirement between men and women to which the original complaint was addressed. We conclude, therefore, that if no male employee was harmed by the pre-May 1967 pension plan, that should dispose of the original complaint and injunctive relief is unnecessary.[22]

21. Appellee contended below that Title VII of the Civil Rights Act of 1964 does not apply to retirement and pension plans.

In February, 1968, the EEOC issued a "Statement of Guidelines" on this subject:

> *Sec. 1604.31 Pension and Retirement Plans*
>
> (a) A difference in optional or compulsory retirement ages based on sex violates Title VII.
>
> (b) Other differences based on sex, such as differences in benefits for survivors, will be decided by the Commission by the issuance of Commission decisions in cases raising such issues. Because the provisions of the Administrative Procedure Act (5 U.S.C. 1003) requiring notice of proposed rule making, opportunity for public participation, and delay in effective date, are inapplicable to these interpretative rules they shall become effective immediately and shall be applicable with respect to charges presently before or hereafter filed with the Commission, except that Section 1604.31(a) will become effective July 1, 1968, with respect to charges hereafter filed with the Commission.

While entitled to due weight (*see* American Newspaper Publishers Ass'n v. Alexander, 294 F.Supp. 1100 (D.D.C.1968), for a discussion of the effect of an EEOC "guideline"), the Commission's declaration is not dispositive of the question, and we have found no reported cases ruling directly on the issue. Appellants rely by analogy on Inland Steel Co. v. NLRB, 170 F.2d 247, 12 A.L.R.2d 240 (7th Cir. 1948), cert. denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949), which held that the requirement in the National Labor Relations Act that employers bargain in respect "to rates of pay, wages, hours of employment or other conditions of employment" covers pension plans. (*See also* Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 222, 85 S.Ct. 398, 13 L.Ed.2d 233, 6 A.L.R.3d 1130 (1964); Retail Clerks Union v. NLRB, 117 U.S.App.D.C. 191, 330 F.2d 210, 215, cert. denied, 379 U.S. 828, 85 S. Ct. 41, 13 L.Ed.2d 31 (1964); and Annot. 12 A.L.R.2d 265, 274 (1950).) Title VII, which prohibits discrimination "with respect to * * * compensation, terms, conditions, or privileges of employment, * * *" 42 U.S.C.A. § 2000e–2(a) (1), is asserted by appellants' counsel actually to be broader in coverage than the National Labor Relations Act language. (App. 96a.)

*Cf.*, Gruenwald v. Gardner, 390 F.2d 591 (2d Cir. 1968), unsuccessfully challenging inequalities in social security benefits based on sex, which did not, however, involve the Civil Rights Act of 1964.

22. In Independent News Co. v. Williams, 404 F.2d 758 (3d Cir. 1968), we upheld the denial of an injunction "against a practice which has already been stopped"

Turning now to the amendment to the original complaint which alleged continuing discrimination under the modified pension plan, we have already noted that a second suit has been filed duplicating the charge that the modified plan violates Title VII. Because this second suit has not yet been disposed of, and because it deals with precisely the same substantive issues as the amendment to the original complaint, we deem it unnecessary to determine whether the grant of summary judgment as to that portion of the first complaint was in error.[23] It was suggested at oral argument that consolidation of the two actions, i. e., the original complaint as amended and the second complaint, would be sought if this court directed a remand. We believe that this would be the proper procedure to follow and that upon such consolidation the issues involved in the initial complaint, the amendment thereto, and the second complaint, can be sifted out and disposition made of them.[24]

As a matter of form, one other issue must be dealt with. Appellee moved to dismiss the appeal, and argument on the motion was heard at the time of the hearing on the merits. The motion to dismiss the appeal is denied.

The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.[25]

SEITZ, Circuit Judge (dissenting).

The original complaint filed in this action on March 9, 1966, was based on Title VII of the Civil Rights Act of 1964. It explicitly sought declaratory and injunctive relief with respect to the defendant's then pension plan. The gravamen of the complaint was that the plan violated the Act because it discriminated in several respects in favor of female employees and in others, in favor of male employees. After the action was commenced, the defendant company revised the plan. Thereafter the plaintiffs

---

where there was a "reasonable inference" the practice would not be resumed. 404 F.2d at 761. We believe similar disposition is warranted here with respect to the discrimination charged in the initial complaint which has now been eliminated.

23. We also deem it unnecessary therefore to determine whether, as appellants contend, the discrimination alleged in the modified pension plan was in fact a partial continuation of the discriminatory scheme of the original pension plan.

24. In connection with the charge made in the amendment to the first complaint, and in the second complaint, that the modified pension plan violates Title VII of the Civil Rights Act of 1964, the question may again arise as to whether the proper administrative procedures have been followed to permit the court to decide the issues raised on the merits. While the appellee has stated it would not raise any "jurisdictional" objections to the second suit (appellee's reply brief, p. 3; appellee's brief on motion to dismiss, appeal, p. 3), the district court has the right, of course, to raise the question of jurisdiction, in the broad sense of that term, sua sponte. In view of the fact that appellants have filed a charge with the EEOC against the modified pension plan, and the

EEOC pursuant to appellants' request has authorized the institution of a civil suit on this charge, supra note 15, the necessary prerequisites for court action appear to have been met according to the authorities cited in note 11, supra.

25. We do not dispute the "public policy overtones" in this case stressed in the dissent. The applicability of Title VII to pension plans, particularly as related to the prohibition against discrimination on account of sex, will no doubt have to be determined in the second suit pending between the parties even if the original complaint is found to be moot. Furthermore, if appellants prevail in the second suit, there may emerge a pattern of discrimination which could conceivably call for injunctive relief.

All we decide today is that on the record in this appeal the powerful remedy of injunction is not warranted to provide protection from the discriminatory practice, alleged in the original complaint, which has already been eliminated. With respect to the second suit and the amendment to the first complaint, which should no doubt be consolidated for trial, we believe (without completely foreclosing the matter) that the issues are ripe for disposal on the merits. See note 24 supra.

amended their complaint[1] to challenge the plan as revised and to assert a class action. Still later defendant filed a motion for summary judgment on several grounds. In amending their complaint plaintiffs made it clear that they were not withdrawing the original complaint, even though they conceded that the bulk of the specific grievances alleged may have been rectified by the adoption of the revised plan.

The district court granted defendant's motion for summary judgment. Apparently the district court believed that the subject matter of the original complaint had been rendered moot by the revision of the pension plan and that only the amended complaint was before it. The amended complaint was dismissed on the ground that the court did not have jurisdiction over its subject matter, because plaintiffs had not complied with the procedural requirements of the Act by first requesting relief from the EEOC.

As I understand the majority opinion, the court is remanding the subject matter of the original complaint to the district court to have it determined if there are any employees, apparently treated as a class, who were injured by the alleged violation of the Act in the period prior to the modification of the plan. If not, then presumably under the majority decision, the district court properly viewed the original complaint as moot. If so, then the majority would direct the district court to decide whether plaintiffs have otherwise stated a legally cognizable claim. Although I agree with the majority that there should be a remand, I think their remand is too restrictive.

By their original complaint the plaintiffs sought, inter alia, a declaratory judgment that the plan violated the Act. The defendant raised many defenses, in-cluding the contention that Title VII of the Act did not apply to pension retirement plans. I think plaintiffs were entitled to have a declaration as to whether Title VII was applicable to the plan and, if so, whether the plan violated the Act. The revision of the plan did not render these important issues moot; the parties were still very much concerned with their resolution. Indeed, the issue of the applicability of Title VII was reasserted by the defendant after the plaintiffs amended the complaint. Moreover, it was a particularly appropriate subject for a declaratory judgment in view of the public policy overtones involved.[2]

Plaintiffs also sought injunctive relief. Were the district court to decide that Title VII applies to pension plans and that the revised plan was in violation of the Act then the court would be obliged to consider the need for an injunction. Contrary to the majority's approach, I think that it is premature to consider the propriety of injunctive relief in view of the fact that the question was not presented or decided below, and because the basis for such a determination has not been developed.

I next consider the dismissal of the amendment to the complaint by the district court on the ground that plaintiffs had not exhausted their remedies before the Commission as was said to be required by the Act. 42 U.S.C.A. § 2000e–5(e). The majority decided that this issue need not be resolved. I am forced to disagree.

Preliminarily, although the district court posed the issue in terms of its jurisdiction, it had jurisdiction and the issue is whether the statutory prerequisite had been satisfied.

Considering the discrimination charged in the amendement with that in the original complaint,[3] I conclude that

---

1. I agree with the majority's decision to treat the complaint as if an amendment had been filed.

2. Compare Wirtz v. Local 153, Glass Bottle Blowers, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).

3. In substance both the original and the amended complaints charge unlawful discrimination because women employees, when electing early retirement, are treated more favorably than their male counterparts.

the subject matter is so interrelated that the Act does not require plaintiffs to again petition the Commission in order that the district court might properly consider the amendment. A purpose for first proceeding before the Commission in this type of case is to permit an amicable settlement without litigation. When grievances are obviously independent, that statutory purpose is best served by first resorting to conciliation before the EEOC. However, and as the EEOC urges, where, as here, the basic grievance had been "processed" by the Commission and litigation recommended, no statutory purpose is served by forcing further conciliation efforts. I therefore believe that it was error to grant summary judgment on the ground relied upon by the district court.