**Robert HALL**

v.

**WERTHAN BAG CORPORATION.**
Civ. No. 4312.

United States District Court
M. D. Tennessee,
Nashville Division.
March 3, 1966.

---

Avon N. Williams, Jr., Z. Alexander Looby, David Vincent, Looby & Williams, Nashville, Tenn., Jack Greenberg, Leroy Clark, New York City, for plaintiff.

Norman R. Minick, William J. Harbison, Trabue, Minick, Sturdivant & Harbison, John J. Hooker, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., Frank A. Constangy, James Hoover, Constangy & Prowell, Atlanta, Ga., for defendant.

Avon N. Williams, Jr., Z. Alexander Looby, David Vincent, Looby & Williams, Nashville, Tenn., Jack Greenberg, Leroy Clark, New York City, for intervenor.

GRAY, District Judge.

Ray Tate, a Negro employed by the defendant, Werthan Bag Corporation, has moved to intervene as a plaintiff in this action which is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The action was instituted by Robert Hall on behalf of himself and "all other Negroes who are similarly situated and affected by the racially discriminatory and unlawful employment practices" allegedly committed by the defendant. Defendant resists the attempted intervention primarily on the ground that a class action may not be maintained to enforce rights created by Title VII.

The requirements for the maintenance of a class action are set forth in Rule 23(a), Federal Rules of Civil Procedure, which provides in relevant part as follows:

"(a) If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the char-

acter of the right sought to be enforced for or against the class is

" * * *

" * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

■ Although Rule 23(a) has often been invoked in cases challenging a policy which is illegally discriminatory on its face,[1] several courts, doubting the existence of a common question of law or fact, have held that class actions are not proper in cases challenging the practice of discrimination which occurs apart from an avowed policy of discrimination.[2] For purposes of allowing a class action for injunctive relief, however, this court is unable to perceive any real distinction between a policy which is discriminatory on its face and a policy which is shown to exist and to be discriminatory only by an analysis of its application, or, as the defendant structures it in its brief, between a class discrimination because of race and an individual discrimination because of race. Racial discrimination is by definition a class discrimination. If it exists, it applies throughout the class. This does not mean, however, that the effects of the discrimination will always be felt equally by all the members of the racial class. For example, if an employer's racially discriminatory preferences are merely one of several factors which enter into employment decisions, the unlawful preferences may or may not be controlling in regard to the hiring or promotion of a particular member of the racial class. But although the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class. And whether the Damoclean threat of a racially discriminatory policy

hangs over the racial class is a question of fact common to all the members of the class. The court is of the opinion, therefore, that a significant question of fact common to all members of the class exists in this case insofar as the complaint seeks the removal of the alleged discriminatory policies. To the extent that it seeks redress for past effects of the alleged discrimination, however, the controlling questions of fact are not common to the entire class.

The particular problems relating to the applicability of Rule 23(a) to the enforcement of rights created by Title VII of the Civil Rights Act of 1964 remain to be considered. These problems are to some extent the product of the ambiguous structure of the enforcement provisions of Title VII resulting from its somewhat chaotic legislative history. As originally drafted, the enforcement provisions of Title VII were patterned after the provisions of the National Labor Relations Act:[3] the Equal Employment Opportunity Commission was to have authority to issue cease-and-desist orders and to seek enforcement of those orders in the courts, and the emphasis was upon protection of the public interest and upon obtaining broad compliance with the provisions of the title.

Congressional machinery, however, turned the enforcement provisions of Title VII inside out. The Commission was stripped of the authority to issue orders by the House Judiciary Committee and stripped of its power to prosecute court actions by the leadership compromise in the Senate. The emphasis shifted toward the vindication of individual rights and the burden of enforcement shifted from the Commission to the ".person aggrieved."

Nevertheless, the metamorphosis was not absolute. Section 706(i),[4] for example, provides for a form of supervision

---

1. See Barron and Holtzoff, Federal Practice and Procedure, § 562.1.

2. Reddix v. Lucky, 252 F.2d 930 (5th Cir. 1958); Johnson v. Yeilding, 165 F.Supp. 76 (D.C.1958).

3. 29 U.S.C. §§ 151–168.

4. 42 U.S.C. § 2000e–5(i).

by the Commission over matters arising as a result of a court's order entered in a Title VII proceeding which suggests that Congress contemplated a scope of relief reaching beyond the limited interests of the single "person aggrieved." Likewise, Section 706(g) [5] provides that a court may "enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay * *." And as one commentator has observed, "This language is substantially unchanged from that in Section 707(e) of the House-passed bill, and in the context of that bill it clearly meant that the court should enjoin the subsequent commission of unlawful employment practices in as broad terms as would have been proper for a cease-and-desist order under the NLRA." [6]

The partial metamorphosis, therefore, resulted in a dichotomy in the philosophy underlying the enforcement provisions of Title VII: emphasis is placed primarily on protection of persons subject to discrimination rather than on protection of the public interest, but for the protection of persons subject to discrimination, Congress apparently envisioned a rather broad scope of relief similar to that which would be necessary for the protection of the public interest. A privately instituted class action is unique in its adaptability to Title VII's split personality.

■ But is a privately instituted class action congruous with the requirement that a "person aggrieved" exhaust his remedies before the Commission as a prerequisite to court action? [7] The answer can be reached by an analysis of the intended purpose of the requirement of a preliminary resort to the Commission remedies. Title VII provides that "[i]f * * * the Commission has been unable to obtain voluntary compliance" and so notifies the person claiming to be aggrieved [8] a court action may be instituted. But it fails to state whether a person claiming to be aggrieved may institute a court action in the event that the Commission determines that the charge of discrimination is without merit and therefore does not attempt to obtain voluntary compliance. Congressional intent in this regard, however, is indicated by comments made during the long floor debate preceding enactment. Particularly revealing are the following statements made by Senator Javits: [9]

"* * * the Commission does not have to find that the complaint is a valid one before the complainant individually can sue or before the Attorney General can bring a suit to establish a pattern or practice of discrimination. The Commission may find the claim invalid; yet the complainant still can sue, and so may the Attorney General, if he finds reasonable cause for doing so. In short, the Commission does not hold the key to the courtroom door. The only thing this title gives the Commission is time in which to find that there has been a violation and time in which to seek conciliation.

"* * * *

"Mr. President, this provision gives the Commission time in which to find that there exists in the area involved a pattern or practice, and it also gives the Commission time to notify the complainant whether it has or has not been successful in bringing about conciliation.

---

5. 42 U.S.C. § 2000e-5(g).

6. Richard K. Berg, "Equal Employment Opportunity under the Civil Rights Act of 1964," 31 Brooklyn Law Review 62, at 86.

7. Cf. Carson v. Warlick, 238 F.2d 724 (4th Cir. 1956) on the effect of administrative remedies on the right to bring a class action.

8. 42 U.S.C. § 2000e-5(e).

9. Vol. 110 Cong.Rec. 14191 (6-17-64). See also the somewhat less accurate remarks of Senator Humphrey at 110 Cong. Rec. 14188 (6-17-64).

"* * *

"But, Mr. President, that is not a condition precedent to the action of taking a defendant into court. A complainant has an absolute right to go into court, and this provision does not affect that right at all."

It seems clear, therefore, that the requirement of resort to the Commission was designed to give a discriminator opportunity to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction; that the requirement was not designed to serve as a screen to prevent frivolous complaints from reaching the courts. Consideration of the constitutional problems arising from a construction of the title as prohibiting access to the courts to unsuccessful complainants before the Commission makes it particularly compelling to construe it so as to give effect to the clear legislative intent, in spite of the possible ambiguity of the language.

■ What this court conceives to be the true purpose of this requirement would not be served by restricting the class for whose benefit this action may be maintained to only those Negro employees or would-be employees of the defendant who have resorted to the Commission, that is, to Robert Hall alone, for he is admittedly the only such person who has exhausted Commission procedure.

In the charge which he filed with the Commission, Robert Hall alleged that the defendant refused to provide him "and other Negroes similarly situated, training opportunities, wage increases and transfers, while making the same available to newly-hired white employees" and that the defendant maintained "a segregated job classification structure in reserving specific classifications for white employees only." The Commission investigated these allegations together with Hall's specific allegation that he was denied transfer to the machinist classification because of his race and found probable cause to believe that the allegations of discrimination were true. The Commission then attempted unsuccessfully to obtain what it considered voluntary compliance with the provisions of the title. In regard to the injunctive relief sought in this case, therefore, the purpose of the requirement of resort to the Commission has already been served. In regard to whatever back pay or reinstatement which might be sought as ancillary relief, however, the purpose of the administrative remedies requirement has been satisfied only as to Robert Hall, for the Commission has not attempted conciliation in regard to rectifying any alleged injuries which other Negro employees or would-be employees may claim to have suffered as a result of the defendant's alleged discrimination.

■ Upon consideration, therefore, the court is of the opinion that the complaint herein properly states a class action under Rule 23(a) insofar as it seeks a prohibitive injunction. The court is of the further opinion that, considering the vexing possibilities of collateral estoppel,[10] intervention should be liberally allowed upon proper serving of notices and filing of pleadings. The Intervenor's Complaint filed by Ray Tate, however, lacks both signature and verification, and the court is of the opinion that these defects should be cured. It is therefore ORDERED that the intervention of Ray Tate as a plaintiff herein be allowed upon the condition that he verify his Intervenor's Complaint within ten days from the entry of this order.

10.  See Barron and Holtzoff, Federal Practice and Procedure, § 572.