LOCAL 186, INTERNATIONAL PULP, SULPHITE AND PAPER MILL WORK-ERS, an unincorporated association, Plaintiff,

v.

MINNESOTA MINING AND MANUFAC-TURING COMPANY, a corporation, Defendant.

Civ. No. 2034.

United States District Court
N. D. Indiana,
Fort Wayne Division.

June 2, 1969.

Max E. Hobbs, Fort Wayne, Ind., Robert Sedler, Lexington, Ky., for plaintiff.

Gilmore S. Haynie, Fort Wayne, Ind., N. Thompson Powers, Washington, D. C., for defendant.

Daniel Steiner, Russell Specter, Marian Halley, Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

This is an action brought by the plaintiff labor union pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., alleging a classwide system of sexual discrimination. The matter is now before the court on the defendant's motion, filed February 13, 1969, to dismiss Paragraphs 4(b) and 4 (c) of the plaintiff's prayer for relief insofar as such prayer seeks an injunction directing defendant to (1) assign all qualified female employees of defendant's plant, other than the named Donna

Perry, who have requested transfer to positions previously designated "Production A jobs" with all the attendant benefits and (2) to reinstate, with all the accrued benefits, all employees who have been disadvantaged because of the alleged sexual discrimination of defendant. After consideration of the defendant's motion, the supporting and opposing memoranda filed by both parties, and oral argument, the court concludes that the defendant's motion must be denied.

The factual allegations of the plaintiff's complaint which must be accepted as true for purposes of deciding the questions raised by defendant's motion may be summarized as follows: On December 14, 1966, the defendant posted a notice for two job openings as "helper" in the Coating Department of the defendant's Hartford City, Indiana, plant, providing therein that the then existing seniority system established by the existing collective bargaining agreement was to control the filling of the vacancy. A female employee and member of the plaintiff union, Donna Perry, signed the posting on December 16, 1966, but on December 20 two male employees, both of whom had less seniority than Donna Perry, were selected for the open positions. Donna Perry was allegedly advised by the defendant that she was not qualified to fill the vacancy, allegedly, according to defendant's memorandum, because the job required two men to lift 300 pounds and because the collective bargaining contract limited such jobs to men only.

The collective bargaining agreement then and still in effect at the time this motion was filed was entered into on April 14, 1966. Such agreement establishes two categories, "Production A employees" and "Production B employees," with jobs correspondingly designated "Production A jobs" and "Production B jobs." All of the defendant's male employees are "Production A employees" and all of defendant's female employees are "Production B employees." All "Production A" jobs carry a higher rate of compensation than do all "Production B" jobs, and entirely separate and distinct

seniority lists are maintained for each classification. The plaintiff labor union, in the belief that the above classifications were in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(a), requested the defendant to abrogate that part of the collective bargaining agreement which limited "A" jobs to "A" employees, or males, and "B" jobs to "B" employees, or females. Defendant refused and still refuses to accede to the plaintiff's request for abrogation, and, as a result, the parties have been allegedly unable to conclude a new collective bargaining agreement.

The plaintiff labor union filed a formal charge, on behalf of Donna Perry, with the Equal Employment Opportunity Commission (hereinafter the Commission) on February 6, 1967. The charge was assigned for investigation by the Commission some seven months later, on September 26, 1967, and such investigation was commenced on October 5, 1967. On May 28, 1968, some fifteen months after the initial filing by the plaintiff, the Commission rendered a decision to the effect that a reasonable cause existed for belief that defendant was in violation of Title VII. On September 20, 1968, or some nineteen months after plaintiff's initial charge was filed, the Commission advised plaintiff that the Commission had been unable to obtain defendant's voluntary compliance. Throughout this nineteen-month period, Donna Perry at various times renewed her request to be assigned to the "Production A" job of "helper" and was and still is being denied such request.

Because neither the municipality of Hartford City nor the State of Indiana have any laws prohibiting the defendant's alleged acts described above, plaintiff was not required to notify local authorities, pursuant to 42 U.S.C. § 2000e-5(b), and therefore filed this action on October 17, 1968 under 42 U.S.C. § 2000 e-5(f), well within the 30-day limitation period of Section 2000e-5(e).

The defendant first moves to dismiss part of plaintiff's complaint on the ground that the court lacks jurisdiction

to adjudicate matters with respect to which plaintiff has not exhausted its administrative remedies. Specifically, defendant argues that the plaintiff union is requesting specific relief, in the form of reinstatement and award of back wages, for members of the union who have (1) not filed the requisite charges with the Commission and (2) not had their cases factually and legally determined by the Commission. Defendant argues that the explicit procedures provided by Congress for processing charges under Title VII would be abrogated if the court does not dismiss the plaintiff's alleged attempt to proceed with a claim consisting of factually diverse issues never yet considered or mediated by the Commission. Moreover, defendant argues, the court is asked by plaintiff to grant relief which would unduly burden the court inasmuch as it is alleged that the court would be compelled to scrutinize literally hundreds of the defendant's personnel decisions affecting promotions, lay-offs, transfers, and similar items, all of which it is alleged are factually distinct from the situation involving Donna Perry.

According to the plaintiff's complaint, it brings the action on behalf of itself and on behalf of all those production employees of the defendant who have been discriminated against on the basis of sex in alleged violation of Title VII. The plaintiff alleges that these persons constitute a class so numerous as to make it impracticable to bring them before the court and that there are common questions of law and fact affecting their rights. Furthermore, plaintiff alleges that as the exclusive bargaining agent for the members of the class, it adequately represents the interests of the class and, moreover, that the defendant has acted or refused to act on grounds generally applicable to the entire class, thereby making appropriate the injunctive relief sought.

While plaintiff does not expressly rely on the class action provisions of Fed.R. Civ.P. 23, its allegations as set out above adequately comply with the requisites of a class action as established under Rule 23(a) and (b) (2). The thrust of the first portion of the defendant's motion, therefore, raises the fundamental question of whether or not the plaintiff labor union may even seek relief for and on behalf of its members under the class action device when but only one member of the plaintiff's class has exhausted her administrative remedies; i. e., has submitted her claim to the Commission for investigation and attempted but fruitless conciliation. The court, for purposes of this motion, accepts as presumptively true all the plaintiff's well-pleaded facts and holds that the plaintiff's failure to expressly invoke Rule 23 is immaterial to the court's determination of the question of the propriety or necessity of granting relief under a class action.

The question of the use of class actions under the 1964 Civil Rights Act has for some time been the basis of much confusion and contradictory holdings among the federal circuits. Research has revealed only a partially discernible pattern to the cases as they bear on the immediate issue of the necessity for each class member to first exhaust his or her administrative remedies before such individually tailored remedies as reinstatement and back wages may be awarded by the court. However, it is clear that, as defendant admits, a class action may generally be maintained on behalf of an individual who has exhausted his administrative remedies and also on behalf of others similarly situated who have not so exhausted such remedies when the remedy sought is solely a prohibitive injunction. Miller v. International Paper Co., 59 CCH Lab.L.Rep. 6868 (5th Cir., Feb. 26, 1969). Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Culpepper v. Reynolds Metal Co., 59 CCH Lab.L.Rep. 6731 N.D.Ga., Jan. 23, 1969; Williams v. American Saint Gobain Corp., Civil No. 68–102 (E.D.Okla., Nov. 2, 1968); Dobbins v. Local 212, International Bro. of

Electrical Workers, 292 F.Supp. 413 (S. D.Ohio 1968); King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga., 1968); Hardy v. United States Steel Corp., 289 F.Supp. 200 (N.D.Ala.1967); Moody v. Albemarle Paper Co., 271 F.Supp. 27 (E.D.N.C.1967); Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332 (S.D.Ind. 1967); Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966). What is less certain is the extent to which, if at all, a court may fashion such individual remedies as reinstatement and award for back wages for unnamed members of the class who were not specifically the subjects of the charge filed with the Commission and have not exhausted their administrative remedies.

The great majority of cases involving Title VII suits have concerned allegations of racial discrimination, and all of which involved Negro plaintiffs. The instant action, on the other hand, involves allegations of discrimination on the basis of sex. The court, however, does not and will not draw any legal distinctions between the seriousness and gravamen of the acts and policies of sexual discrimination alleged herein and the more frequently litigated acts of racial discrimination. Significant social and moral differences may indeed exist between the two types of discrimination, which Congress apparently recognized *pro tanto*. 42 U.S.C. § 2000e-2(e). On the facts herein alleged, however, no purpose would be served by so distinguishing the cases on this basis. Cf. Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332, 362–364 (S.D.Ind.1967).

Title VII specifies a comprehensive procedural scheme for resolving alleged violations of its equal employment opportunity provisions. Section 706, 42 U.S. C. § 2000e-5 provides in pertinent part that:

"(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * has engaged in an unlawful employment practice, the Commission shall furnish such employer * * * with a copy of such charge and shall make an investigation of such charge * * *. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

* * * * * *

"(e) If within thirty days after a charge is filed with the Commission * * *, the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall notify the person aggrieved and a civil action may, within thirty days thereafter, be brought * * * by the person claiming to be aggrieved, * * *."

After the court makes a finding that an employer has intentionally engaged in an unlawful employment practice, the court is empowered to enjoin such unlawful practices and

"order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer * * *, as the case may be, responsible for the unlawful employment practice)." 42 U.S.C. § 2000e-5(g).

But, while a court may enjoin any unlawful employment practice under the above section, the courts which have considered the problem of remedies generally have also developed what has become a jurisdictional limitation on the application of Section 2000e-5(g) when nonexhausting class members are seeking the remedies of reinstatement or back pay. As the court in the case of Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966) stated,

"In regard to the injunctive relief sought in this case, * * * the purpose of the requirement of resort to the Commission has already been served. In regard to whatever back pay or reinstatement which might be

sought as ancillary relief, however, the purpose of the administrative remedies requirement has been satisfied only as to Robert Hall [the employee who had filed with the Commission], for the Commission has not attempted conciliation in regard to rectifying any alleged injuries which other Negro employees * * * may claim to have suffered as a result of the defendant's alleged discrimination." *Id.* at 188.

This rationale that the Commission should be accorded an opportunity to conciliate *each* individual class member's claim for reinstatement and back wages, while such conciliation is held not to be necessary for the remedy of injunction, has recently been followed by several other courts; *e. g.*, Bowe v. Colgate-Palmolive Co., *supra;* King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga., 1968); Williams v. American Saint Gobain Corp., Civil No. 68–102 (E.D.Okl., Nov. 2, 1968); Kemp v. General Electric Co., No. 2061 (N.D.Ga., March 27, 1969) (dictum); Moreman v. Georgia Power Co., 59 CCH Lab.L.Rep. 6901 (N. D.Ga., March 12, 1969) (dictum). *But see* Baxter v. Savannah Sugar Refining Corp., 46 F.R.D. 56 (S.D.Ga., 1969); Quarles v. Philip Morris Tobacco Co., 279 F.Supp. 505 (E.D.Va.1968). As a consequence, the remedy of injunction, and probably only an injunction under the facts and rationale of the above cases, may be obtained in a class action without the requirement that each member of the class exhaust his administrative remedies. This is because an injunction will almost always be drawn to affect all the members of the class regardless of whether or not they have exhausted their administrative remedies. On the other hand, the above cases suggest that the presumably unique and personal remedy of reinstatement and back pay may be obtained through court action only by those members of the class who have previously accorded the Commission an opportunity to conciliate with the employer regarding such individual and personally tailored remedies. Or, as the defendant prefers to characterize it, the above decisions create a distinction between the *existence* of a discriminatory policy, wherein injunctions will apply without the necessity of total class exhaustion, and the *effects* of such discrimination, wherein the individual remedies of reinstatement and back pay under Section 2000e-5(g) may be granted only to exhausting class members.

A partial explanation for the early decisions can be traced to the difficulties which the courts experienced in reconciling the class action with the Title VII policy of clearly emphasizing and encouraging the exhaustion of the remedies of Commission investigation and conciliation before resort was made to the courts. Typical of the reasoning which has stressed the overriding importance of having individual claims first investigated and conciliation attempted is Mondy v. Crown Zellerbach Corp., 271 F. Supp. 258 (E.D.La.1967), rev'd sub nom, Oatis v. Crown Zellerbach Corporation, 398 F.2d 496 (5th Cir. 1968), a case which required all class members to exhaust their administrative remedies before turning to the court. The court's reasoning that certain undesirable effects would result if non-exhaustion were permitted is and has been implicitly and occasionally explicitly shared by those courts which have limited the remedy of reinstatement and back pay to exhausting class members only. Included in the court's reasons are that to allow non-exhausting class members to have court-ordered reinstatement and back pay would (1) permit circumvention of the administrative remedy provided by Congress in the form of Commission investigation and conciliation, (2) directly encourage aggrieved parties to avoid proceeding through the Commission, (3) possibly damage some non-exhausting class member who might in fact prefer to proceed first through the Commission rather than by way of premature court intervention, and (4) unduly depart from the statutorily-created voluntary compliance provisions, since an employer arguably may be more inclined to conciliate through the good offices of the Commis-

sion than through the threat of court-imposed sanctions, or, as stated in Hall v. Werthan Bag Corp., *supra,*

"to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction." 251 F. Supp. at 188.

However, careful examination of the above reasons for requiring exhaustion of Commission remedies indicates to the court that all are either inapplicable or without merit under the factual allegations in the instant action, and for the following reasons. One, the court does not find that Congress intended that each and every member of a labor union, or for that matter any similarly situated group of individuals, who have allegedly been discriminated against as a group, *in violation of* Title VII, must individually file their grievance with the Commission. Congress specifically provided that a labor union, or one *or more individuals,* defined as a "person" under Section 2000e(a) and therefore "person aggrieved" under Section 2000e-5(a), could utilize the Commission procedures. By implication, this relieves each of the potentially hundreds of other union or individual class members *similarly situated* from pursuing this often burdensome and manifestly fruitless task when, as here alleged, the employer refuses to conciliate on his *classwide* policy of discrimination. Thus, such "circumvention of the commission's procedures" was both anticipated and provided for by Congress under the circumstances here alleged.

Two, relieving each member of the aggrieved class from the requirement of exhaustion will not directly or indirectly encourage similarly situated aggrieved class members to avoid otherwise beneficial administrative proceedings so long as the representative of the class has shown to the court's satisfaction that further individual Commission suits will be fruitless. It must be recognized that once a representative of the class has utilized in vain the Commission procedures under the circumstances here alleged, wherein the challenge is brought not just against an employer's practices vis-a-vis an individual but also against the employer's discriminatory practices affecting the entire class, little or nothing would be gained by further challenges to that classwide policy. As was noted in the case of Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968),

"Racial discrimination is by definition class discrimination, and to require a multiplicity of separate, identical charges before the EEOC, filed against the same employer, as a prerequisite to relief through resort to the court would tend to *frustrate our system of justice and order.*" *Id.* at 499.

As earlier noted, this court cannot conclude that under the allegations herein presented, sexual discrimination differs in any significant way from racial discrimination as a form of class discrimination. This court is in agreement with the court's opinion in *Oatis, supra,* that

"It does not appear that to allow a class action, within proper confines, would in any way frustrate the purpose of the Act that the settlement of grievances be first attempted through the office of the EEOC. It would be wasteful, if not in vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful. The better approach would appear to be that once an aggrieved person *raises a particular issue* with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated * * *." 398 F.2d at 498. (Emphasis added.)

On the basis of the facts alleged here, it seems clear that if the defendant refuses to alter its classwide policy of alleged sexual discrimination, the plaintiff has even less reason to believe that the defendant will respond to conciliation in regard to the granting of individ-

ual reinstatements and back pay which may be owing directly *because* of such classwide discriminatory policy already challenged in the prior Commission proceeding.

A third reason for not requiring exhaustion by all class members is that the belief expressed by the court in Mondy v. Crown Zellerbach Corp., *supra,* that some non-exhausting class members might in fact have a preference for utilization of the Commission proceedings individually rather than for presumably premature court intervention, seems on its face a wholly implausible and unsupportable assertion. As indicated by the court in *Oatis, supra,* once one of several employees with similar grievances have utilized in vain the Commission procedures, what reason would there be to assume the next one would desire to trod the same fruitless Commission path? Certainly the individual utilization of Commission proceedings is not always an inexpensive and swift method of vindicating one's equal employment rights; *e. g.,* in the instant case, the Commission took all of nineteen months to finally inform the plaintiff that the Commission had been unable to obtain the defendant's voluntary compliance. The expense and time considerations of proceeding alone through the Commission machinery weigh even heavier when there may be an opportunity, as here, to join in a parallel class action which will raise and defend essentially the same issues and rights which the individual would alone be litigating before the Commission. Notwithstanding the implausibility of an individual rejecting a class action, the court finds no statutory barrier to such an individual class member expressly withdrawing from the class in preference for his own proceeding. However, because a few isolated employees may wish to go it alone should not and does not bar the class action for all those similarly aggrieved and preferring to litigate and vindicate their rights as a class.

Lastly, the argument that an employer might be more inclined to conciliate with the Commission when individual grievances are at issue than when the court intervenes fails to take account of the nature of the alleged class discrimination herein involved. The defendant-employer, as in virtually all of the Title VII class action suits, is here alleged to be discriminating against *individual* employees to be sure. But the plaintiff here is objecting just as strenuously to the alleged classwide policy of discrimination which is allegedly applied uniformly to *all* employees, though necessarily manifested at different times and different ways against different employees. In short, it is fundamental and axiomatic that in racial and sexual discrimination suits involving plantwide policy, similarly situated aggrieved persons should not be forced to utilize in piecemeal and solitary fashion the manifestly repetitious and fruitless administrative procedures when it has been alleged, as here, that the employer is not willing to conciliate on such plantwide policy.

Therefore, the court concludes that it possesses jurisdiction over the subject matter with respect to those members of the plaintiff union who have not individually exhausted their administrative remedies.

Having reached the above conclusion, the court now considers the narrower question of whether or not the non-exhausting class members may properly seek the individual remedies of back pay and reinstatement. Some courts which have considered the question have held that such awards are not within the ambit of the court's power. *See, e. g., Bowe v. Colgate-Palmolive Co., supra;* Hall v. Werthan Bag Corp., *supra;* King v. Georgia Power Co., *supra;* Williams v. American Saint Gobain Corp., *supra;* Colbert v. H-K Corp., 295 F.Supp. 1091 (N.D.Ga.1968) (dictum); Moreman v. Georgia Power Co., *supra* (dictum); Kemp v. General Electric Co., *supra* (dictum). *Per contra,* Quarles v. Philip Morris Tobacco Co., *supra;* Baxter v.

Savannah Sugar Refining Corp., *supra.* The court concludes, however, that the better rule under the facts here alleged is to allow such awards, when appropriate, to non-exhausting class members who fall within certain limitations as set forth below.

The defendant wisely does not assert that the legislative history of Title VII lends any great amount of support to its position that non-exhausting class members should be denied back pay and reinstatement relief. More than a few courts have recognized Title VII's "torrid conception, its turbulent gestation, and its frenzied birth," Miller v. International Paper Co., 59 CCH Lab.L.Rep. at 6871, n. 13 (5th Cir., Feb. 26, 1969), and its almost inherent malleable qualities in the hands of both advocates and courts. Rather, defendant chooses to assert, in support of its position, that to permit non-charging and non-exhausting class members awards for back pay and reinstatement would involve factual issues which have neither been considered by the Commission in the original charge nor are sufficiently related to the charge filed on behalf of Donna Perry to permit this court to consider them.

With regard to the defendant's first assertion, it is contended that the Commission limited its investigation and conciliation efforts solely to the events relating to Donna Perry's alleged denial of a position as "helper-coater" on December 16, 1966. The defendant concludes from this that the Commission did not consider the broad issue here alleged by the plaintiff union of whether or not the defendant had been and is enforcing a classwide policy of sex discrimination.

At least two observations should be made in response to defendant's first objection. One, it is far from clear that the Commission did in fact limit itself solely to an investigation of the Donna Perry incident without regard to the defendant's alleged plantwide policy of sex discrimination. Indeed, the defendant's own evidence would suggest that the Commission *did* in fact consider the broader question of classwide discrimination. According to the defendant's supporting memorandum, the Commission, in its May 28, 1968 decision, found "reasonable cause * * * to believe that respondent is in violation of Title VII of the Civil Rights Act of 1964 as alleged." Such language is patently ambiguous, for it can not only mean that the defendant "is" in violation because of its alleged conduct toward Donna Perry, but also because of its alleged plantwide policy of sexual discrimination in general.

Two, defendant's other supporting evidence largely resolves the above ambiguity in favor of the conclusion that the Commission did consider the broader issue of class discrimination. In defendant's supporting memorandum, it is further stated that the original charge filed by the plaintiff union alleged that the defendant had refused Donna Perry a job for two reasons: One, due to weight-lifting requirements and, two, because the defendant's job classifications as embodied in the collective bargaining contract, restricted such jobs on the basis of sex. Furthermore, defendant introduced at oral argument a copy of the Commission's decision, which includes at least five direct references to the collective bargaining agreement which allegedly establishes the sexual classifications. Moreover, the Commission in its decision clearly stated that Donna Perry was contending that she was denied the sought-after position *on the basis of the union contract.* In light of the foregoing, this court must conclude that the Commission did sufficiently examine the question of alleged classwide sexual discrimination *so* that it is proper for the plaintiff here to pursue it. It should be observed that it is unlikely that at this stage of the proceedings the court can ascertain with any greater degree of certainty the full extent to which the Commission did investigate and attempt to conciliate on this issue of class discrimination, due largely to the statutory prohibition against public disclosure by

the Commission of its efforts and endeavors during such investigatory period. 42 U.S.C. § 2000e-5(a).

Of greater significance is the defendant's second assertion that awards for back pay and reinstatement will necessarily involve factual determinations by this court that are not sufficiently related to the charge filed on behalf of Donna Perry, since such awards will involve factual issues regarding other departments, jobs, promotions, and layoffs, all probably somewhat different than Donna Perry's situation and therefore beyond the scope of this court's proper consideration. The defendant's contention actually raises the fundamental question of what standard, if any, the court should adopt to measure whether or not the non-exhausting class members' claims are too divergent from and unrelated to the original charge to justify the court's consideration of such claims as part of the class action. Without attempting to establish a hard and fast rule, the court finds that a part of the standard applied by the Court of Appeals in *Oatis* for determining the general limits of a Title VII class action will suffice here in determining whether or not non-exhausting class members have raised factual issues sufficiently within the scope of the original charge to be heard as part of the class. That standard as used in *Oatis* would require that the non-exhausting class members "assert the same or some of the issues" as the plaintiff bringing the original charge before the Commission and that they "must proceed * * * within the periphery of the issues which [the representative plaintiff] could assert." 398 F.2d at 499. In marginal or doubtful cases, the court in *Oatis* held that "due to the inapplicability of some of issues to all the members of the class, the proceeding might be facilitated by the use of subclasses." *Id.*

This procedure was expressly adopted by the court in Baxter v. Savannah Sugar Refining Corp., *supra*, a case wherein back pay awards and mandatory promotions were held to be proper remedies for non-exhausting class members. The court there recognized that *Oatis* held "that the issues in the litigation are not to be extended beyond the reach of the grievances involved in the complaint to the EEOC." 46 F.R.D. at 58. However, the court further observed that

"Three years of judicial interpretation make it plain that no parochiality of approach is acceptable in construing or dealing with Title VII. * * * [T]he scope of an EEOC complaint should not be strictly interpreted. There is probably enough in [the plaintiff's] grievance to constitute a complaint of racial discrimination which is company-wide rather than confined to his own particular department and his own specific grievance." *Id.* at 59.

The court refrained from making further findings as to the scope and identification of the class or subclasses until further factual findings were available.

A similar result, though involving future wages, was reached in Quarles v. Philip Morris Tobacco Co., *supra*. There a non-exhausting member of the plaintiff's class was awarded a $.34 per hour wage increase after a finding by the court that the defendant's unlawful employment practice made wage relief appropriate under Section 2000e-5(g). The court's finding was expressly based on its prior ruling "that each member of the class was not required to pursue administrative relief for the correction of the same employment practices." 279 F.Supp. at 507.

Moreover, the Fifth Circuit recently emphasized the growing policy of flexibility under Title VII when it held that

"In formulating relief * * * the courts are not limited to simply parroting the Act's prohibitions but are permitted, if not required, to order such affirmative action as may be appropriate. * * * The district court [is] invested with a large measure of discretion in modeling its decree to ensure compliance with the Act, * * *." Local 53 of International Ass'n of Heat and Frost Insulators and Asbestos

Workers v. Vogler, 407 F.2d 1047, 1052. (Jan. 15, 1969).

In *Asbestos Workers, supra,* the court upheld a broad order directing the defendant union to admit specific individuals not previously members, develop objective membership criteria, and, in the interim, to alternate white and black job referrals and to freeze union membership. It should be noted that none of the district court's remedies are expressly included in Section 2000e-5(g), which sets forth possible remedial court action, whereas the remedy sought in the case at bar of back pay and reinstatement is expressly included.

Finally, the limitation here urged by defendant on possible relief for the alleged sexual discrimination policy in defendant's plant seems particularly inconsistent with the public nature of such suits, as expressed by the United States Supreme Court in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and further amplified by the Fifth Circuit in Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

In *Newman, supra,* the Supreme Court held, in a Title II action, that

"When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only. * * * If [plaintiff] obtains an injunction, he does so not for himself alone, but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Id.* at 401–402, 88 S.Ct. at 966.

Similarly, the Fifth Circuit has said, in a Title VII action, that

"The suit is therefore more than a private claim by the employee seeking the particular job which is at the bottom of the charge of unlawful discrimination filed with the EEOC. When conciliation has failed * * *

that individual, often obscure, takes on the mantel of the sovereign." 400 F.2d at 32.

It seems abundantly clear that the public interest emphasized above is and should be served just as much, if not more, by relief through awards for back wages and reinstatement to obscure class members as by the issuance of an injunction.

Moreover, the limitations urged here by defendant seem even more inconsistent with the reasoning of Oatis v. Crown Zellerbach and its progeny; to wit, that it is wasteful, if not vain, for all employees with the same grievance to file charges with the Commission. If that reasoning be persuasive, and the court finds that it is, then back wages and reinstatement, if appropriate, should be awarded without regard to which employee in fact filed. *Cf.* Berg, "Title VII: A Three Years' View," 52 Notre Dame Lawyer 311, 326.

The court further concludes that there exists ample additional jurisdictional authority even apart from the foregoing reason that the plaintiff's action is a presumptively valid Rule 23 class action at this preliminary stage in the proceeding. Such additional reason for the court's assuming jurisdiction will be observed in the fact that the plaintiff labor union is bringing this action not only as a representative of a class but also as an individually "aggrieved person" under Section 2000e and 2000e-5. As such, it clearly has standing to bring such an action. International Chemical Workers Union v. Planters Mfg. Co., 259 F. Supp. 365 (N.D.Miss.1966).

The defendant's argument that the court lacks jurisdiction over a Title VII suit brought by a labor union on behalf of its non-exhausting members who are seeking back pay and reinstatement was presented to the court in *International Chemical Workers, supra,* to wit:

"The thrust of the defendant's argument on this point is, however, directed to pointing out obvious differences between a union and an individual. * * * Additional argument made

by defendant on this point is, in reality, addressed to the form of relief, if any, which might be proper for this court to grant after a full evidentiary hearing on the factual allegations made by the complaint. It would be inappropriate, at this stage of these proceedings, for this court to attempt to narrowly define its authority to act or to broadly construe its powers to fashion relief appropriate to deal with the facts as they may be developed." 259 F.Supp. at 368.

The laudable restraint expressed by the court above warrants recognition in the instant action, but not, however, without recognition and application of certain considerations. One, it should be noted that our own Seventh Circuit Court of Appeals in Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968), held with respect to the jurisdictional prerequisites for a Title VII action that

"The requirement that a complainant must invoke the administrative process within the time limitations set forth in Section 706(d) [Section 2000e-5(d)] is a jurisdictional precondition to a commencement of a court action. A close reading of the statute indicates that there are only two additional jurisdictional prerequisites for such commencement: first, a notification to the aggrieved party by the Commission that it has been unable to obtain voluntary compliance and, second, the action must be filed within thirty days after the notification." Id. at 359.

The plaintiff union easily satisfies the above three jurisdictional preconditions, since it has met the statutory time limitations and has been notified by the Commission that voluntary compliance has not been obtained. Cf. Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267 (4th Cir. 1967); Mickel v. South Carolina State Employment Serv., 377 F.2d 239 (4th Cir. 1967).

Two, the defendant raises a groundless objection when it asserts that plaintiff's action involves requested relief which will unduly burden the court if such relief is granted. Defendant cites an imposing array of cases in support of its position that while injunction may arguably be a proper remedy under the circumstances, an award of reinstatement and back pay to non-exhausting union members would thwart the Congressional mandate that employers be afforded an opportunity "to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction." Hall v. Werthan Bag Corp., 251 F.Supp. at 188 (M.D.Tenn.1966); See also, Bowe v. Colgate-Palmolive Co., supra; King v. Georgia Power Co., supra; Williams v. American Saint Gobain Corp., supra; Cf. Culpepper v. Reynolds Metal Co., supra; Moreman v. Georgia Power Co., supra (dictum); Kemp v. General Electric Co., supra (dictum). However, each of the cases relied upon by the defendant is distinguishable from the instant action in the following important considerations. One, none of the cases cited involves a labor union as the sole complainant before both the Commission and subsequently the court. Indeed, in Bowe, King, Moreman, and Williams, the labor unions therein involved were joined not as party plaintiffs seeking relief, but as party defendants against whom relief was sought. As a consequence, none of the cases give any consideration to the express statutory language permitting labor unions both standing as "aggrieved persons" and the opportunity as aggrieved persons to be furnished "affirmative action as may be appropriate, which may include reinstatement * * * with or without back pay * * *." 42 U.S.C. § 2000e-5 (g). Nor is any consideration given to the general duty of a labor union to fairly represent all of its members and the union's duty, therefore, to seek relief in its complaint, pursuant to its duty of fair representation, for all the members of the union who have been the victims of illegal discrimination.

Two, the cases relied upon by the defendant give no consideration to the statutory options available to a court in attempting to "order such affirmative

action as may be appropriate." At least three important procedures are available to a court which, if appropriate, might be utilized. They include (1) resort to a full evidentiary hearing and trial by the court on the merits and, if the number of meritorious claims from among the class is not unduly large, separate and individual awards, by the court itself, of reinstatement and back pay, all pursuant to the provisions of Section 2000e-5(g); (2) resort to a special master under Fed.R.Civ.P. 53 for the determination and resolution of the possiby complex and cumbersome questions regarding individual discriminatory promotions, demotions, lay-offs, transfers, and reductions in hours, but only after the court itself has adjudged that the defendant in fact is in violation of Title VII. *See, e. g.,* the procedure adopted by this court in a class action securities case in Brennan v. Midwestern United Life Ins. Co., 286 F. Supp. 702 (N.D.Ind.1968), and the court's subsequent Order of Reference to Special Master, No. 1716, (N.D.Ind., Jan. 2, 1969); or (3) under Section 2000e-5(i), the Commission could be resorted to in compelling compliance with any court order, including separate awards of reinstatement and back pay for all those employees the court found to have been discriminated against as of and from a judicially determined date.

Finally, even the defendant implicitly concedes that some of the cases it relies upon have properly concluded that an award of relief in the form of reinstatement and back pay is inherently a matter of judicial discretion. *See, e. g.,* Bowe v. Colgate-Palmolive, *supra,* 272 F.Supp. at 358. That other courts have chosen to exercise this discretion by refusing such relief is not sufficient reason, by itself, for this court to stay its hand if the surrounding circumstances warrant judicial relief. Of course, this court does not express an opinion at this stage of the proceeding on the merits of the plain-

tiff's claim beyond that which has been assumed for purposes of ruling on the defendant's motion.

The defendant's second principal argument is that the action, as it relates to claims other than that of Donna Perry, is barred for failure to comply with the limitation provisions of 42 U.S.C. § 2000e-5(d). Specifically, defendant argues that no individual employee of defendant's plant, other than Donna Perry, has filed a charge under Title VII and that since the only claim of discrimination which the Commission has considered allegedly occurred on December 16, 1966, the statutory requirement that claims must be filed with the Commission within 90 days of the alleged discriminatory conduct denies to the court any jurisdiction to consider claims other than that of Donna Perry.

The defendant's argument misconceives the essential nature of the plaintiff labor union's position in bringing the instant action. It is suing not only on behalf of Donna Perry but also on behalf of all its members who may have been discriminated against and on behalf of *itself.* The union alleges that the defendant's seniority system and job classifications were, on December 16, 1966, *and still are,* in violation of Title VII of the 1964 Civil Rights Act. While, according to the defendant, the Commission investigated only a charge of alleged discrimination against one member of plaintiff's union, Donna Perry, the union *itself* brought the action first before the Commission and now before this court. In so doing, it clearly satisfied the 90-day limitation requirement of Section 2000e-5(d), since the union alleged the defendant's discriminatory conduct occurred on December 16, 1966, and the charge was subsequently filed with the Commission on February 6, 1967.

Defendant's motion to dismiss Paragraphs 4(b) and 4(c) of plaintiff's complaint is denied.