**Gyula FEKETE, Appellant,**

v.

**U. S. STEEL CORPORATION.**

**No. 18113.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 3, 1970.

Decided April 13, 1970.

Marjorie Hanson Matson, Pittsburgh, Pa., for appellant.

David R. Cashdan, Equal Employment Opportunity Commission, Washington, D. C., for amicus curiae, Equal Employment Opportunity Commission, Russell Specter, Acting Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., on the brief.

Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Jonathan L. Alder, Pittsburgh, Pa., on the brief, for appellee.

Before FREEDMAN, ALDISERT and GIBBONS, Circuit Judges.

ALDISERT, Circuit Judge.

This appeal poses the issue whether the district courts may entertain actions under Title VII of the Civil Rights Act of 1964 [1] even though the Equal Employment Opportunities Commission (EEOC) has found no reasonable cause to believe the allegations of discrimination.

Appellant, born and reared in Hungary, came to this land in 1956 following the Soviet occupation of that country. He was employed by the United States Steel Corporation in 1964 as a machinist but was dismissed from this job on October 21, 1967. Pursuant to the provisions of Title VII, appellant filed a complaint with the EEOC alleging that his discharge resulted from his employer's discrimination against Americans of Hungarian origin. Following referral of the charge to the Pennsylvania State Human Relations Commission, which rejected the charges, and an investigation of its own, the EEOC concluded that "the evidence does not support the charge. * * * Reasonable cause does not exist to believe that Respondent is in violation of Title VII * * *, as alleged." Appellant then filed this action in the district court, reasserting his charge of discrimination because of ancestral origin.[2] On motion of appellee, the court dismissed the suit on the grounds that a Commission finding of no reasonable cause to believe the allegations precludes the district court from entertaining the action.[3] We disagree.

The court below based its decision to dismiss on the wording of § 2000e–5(a) and (e) of Title VII which outlines the procedures to be employed in the processing of discrimination claims:

(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * has engaged

---

1. 42 U.S.C.A. § 2000e et seq.

2. In its letter informing appellant that it had dismissed his charges of discrimination, the EEOC enclosed the appropriate "notification which, if you so desire you may use as a basis for suit in the U. S. District Court." We do not consider it insignificant that the EEOC has appeared in this action as amicus curiae in support of appellant's position. See Allen v. State Board of Elections, 393 U.S. 544, 557 n. 23, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

3. The court alternatively held that the action was rendered moot by a labor arbitrator's decision—rendered pursuant to appellant's filing of grievances under the company-union collective bargaining agreement—which reinstated appellant to his job with back pay. As we interpret the complaint filed below, however, appellant seeks injunctive relief against an allegedly continuing course of discrimination unaffected by the arbitration decision. As such, the case is readily distinguishable from our prior holding in Rosen v. Public Service Elec. & Gas Co., 409 F.2d 775 (3 Cir. 1969), where the alleged discrimination was ended and the action mooted by the specific written terms of a company-union contract.

in an unlawful employment practice, the Commission * * * shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion * * *.

(e) If [after the appropriate time schedule] the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved * * *.

■ From these portions of Title VII, it becomes apparent that the primary role of the Commission is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance with the Act. Imposed as a condition precedent to such Commission action is the requirement of a finding of "reasonable cause to believe that the charge is true." And where the Commission makes such a finding, attempts to obtain voluntary compliance, and fails, the Act empowers the aggrieved claimant to institute a civil action to compel compliance.

Significantly, there are no provisions in the Act which (1) describe the effect of a Commission finding of no reason to believe or, in such circumstances, (2) define the rights, if any, of a "person claiming to be aggrieved." The absence of such provisions has precipitated the troublesome issue now before us.

The court below concluded, despite this procedural void, that the "plain words of the Act" preclude judicial review of charges which the Commission has rejected. This conclusion could only have been inferred from, rather than directed by, the statutory language. We deem it necessary to examine the Act in its entirety, considering both its legislative history and the perimeters of the problems and issues which prompted its passage.

■ The journey of the Civil Rights Act of 1964 through the halls of Congress was marked by lively debate in an atmosphere of intense national interest. At journey's end, however, the Act emerged not as originally proposed or debated, but quilted with amendments. There is a dearth of comment about these changes in the pages of the Congressional Record. Notwithstanding the extensive discussions which preceded its passage, and perhaps because of the divisions of house and thought these discussions revealed, the plain fact seems to be that the give-and-take of the legislative process which spawned this Act compromised it into a "final product containing gaps so that 'the question which is [now] raised on the statute never occurred to [Congress].' " [4] In such a situation the task of divining the "legislative intent" rests upon the sound application of judicial principles and precedents.

■ We begin with the well-established principle, only recently reiterated by the Supreme Court, that "[t]here is no presumption against judicial review and in favor of administrative absolutism (see Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510–1511, 18 L.Ed.2d 681), unless that purpose is fairly discernible in the statutory scheme." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184. "Indeed, judicial review

4. Grimm v. Westinghouse Elec. Corp., 300 F.Supp. 984 (N.D.Cal.1969), *citing* Miller v. International Paper Co., 408 F.2d 283 (5 Cir. 1969). The *Miller* case contains an excellent discussion of the legislative history of Title VII.

of such administrative action is the rule, and nonreviewability an exception which must be demonstrated." Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

Prior decisions of other circuits which have interpreted Title VII are consistent with the view we take of reviewability. Of particular note is the Fifth Circuit's holding in Miller v. International Paper Co., 408 F.2d 283 (5 Cir. 1969), where suit was filed in the district court following notification from the EEOC that it was unable to determine whether there was reasonable cause to believe the allegations of discrimination. Reversing the dismissal of the action, the court held:

> For whatever reason, if voluntary compliance is not achieved within sixty days after the charging party files his complaint with the EEOC, his right to be notified of the failure vests and, upon receipt of notice, he may file suit in the district court. The action or inaction of the EEOC cannot affect the grievant's substantive rights under the statute. We reiterate the holding in [Dent v. St. Louis-San Francisco R. Co., 406 F.2d 399 (5 Cir. 1969)] that an effort to conciliate by the EEOC is not in any sense a condition precedent to the charging party's right to seek judicial consideration of his grievance.

408 F.2d at 291.[5]

In Grimm v. Westinghouse Corp., *supra*, note 4, the claimant instituted suit after notification from the EEOC that it found no reason to believe the grievances alleged. In a well-documented, analytical opinion, District Judge Zirpoli held that a negative determination by the Commission did not bar judicial review of the claim. Noting that the Commission is itself without enforcement powers and that only the grievant may initiate judicial enforcement of the substantive provisions of the statute, the court said:

> Only by permitting plaintiff to bring a private suit despite a Commission finding of no reasonable cause can this Court give effect to the established principle that a grievant may not be prejudiced by any conduct of the Commission. [Citations omitted.] Only by permitting plaintiff to bring suit can this Court preserve the statutory scheme whereby the right to equal employment opportunity is to be secured by individuals. * * *[6]

300 F.Supp. at 990.

We concur in Judge Zirpoli's analysis. We do recognize that the language of Section 2000e–5(e) is capable of an interpretation that the Commission must have been unable to obtain voluntary compliance as a prerequisite to the initiation of a civil action. But we are also mindful that House Bill 7152 in its pre-amendment form specifically required the concurrence of at least one Commission member as a prerequisite to suit[7] and that the statute as finally

---

5. In *Dent*, the Fifth Circuit held that Section 2000e–5 contains "only two requirements for an aggrieved party before he can initiate his action in the United States district court: (1) he must file a charge with the Equal Employment Opportunity Commission and (2) he must receive statutory notice from the Commission that it has been unable to obtain voluntary compliance." 406 F.2d at 403. Prior to the *Dent* decision, similar holdings had been made by the Fourth and Seventh Circuits in Johnson v. Seaboard Air Line R. Co., 405 F.2d 645 (4 Cir. 1968) and Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7 Cir. 1968). See also Rosen v. Public Service Elec. & Gas Co., 409 F.2d 775, 778 n. 11 (3 Cir. 1969).

6. Similar holdings were made in Edwards v. N. American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968) and Holliday v. Railway Express Co., Inc., 306 F.Supp. 898 (N.D.Ga.1969). Contra, Green v. McDonnell Douglas Corp., 299 F.Supp. 1100 (E.D.Mo.1969); Flowers v. Local No. 6 Laborers Union, F.Supp. (E.D. Ill.1969).

7. Section 707(c) "If the Commission has failed or declined to bring a civil action within the time required * * * the person claiming to be aggrieved may, if one member of the Commission gives

enacted did not contain this provision. Moreover, an accompanying section (707(b)) permitting the Commission itself to bring suit did not survive final passage. And, as stated above, the final legislation has failed to specify the consequence or significance of the Commission's failure to find reasonable cause.

Against this backdrop, we conclude that good reason and fealty to the spirit and purpose of the Act command that we do not require an affirmative finding by the Commission as the passport for judicial review. To engraft more significance onto the Commission's preliminary finding is to suggest that in this important federal legislation, purposely enacted to protect the rights of aggrieved individuals who believe they have suffered discrimination, it was the intention of Congress to create a Commission completely stripped of power to enforce the Act against an errant employer, but superbly endowed with power to frustrate the prosecution of any claim by the simple expedient of issuing a non-reviewable order saying there is no reasonable cause to believe a violation existed. We cannot accept the hypothesis that Congress intended to entrust the key to judicial relief with an agency given no power to direct the processing of a civil action in court.[8]

■ Unquestionably, the Commission's role is an important one, designed to encourage and to effect voluntary compliance with the provisions of the Act. But in this role of investigator and conciliator, the Commission is not the final arbiter of an individual's grievance.[9] Under Title VII that function is vested solely in the courts. Only the courts have the power of enforcement. No power to issue penalty, citation, or cease and desist orders has been vested in the Commission by Congress.

■ In sum, we do not conceive the role of the Commission to be that of exclusive administrator of the Act. Although it is entrusted with important and sensitive responsibilities of investigation and conciliation, it was not intended by Congress to pre-empt the ultimate rights of the claimant, the person the Act was designed to protect. We therefore conclude that the ultimate decision whether the claim is real or fanciful must be for the courts, and not the Commission.

■ We hold that the intention of Congress in Title VII was: first, to outlaw employment practices which discriminate against any individual "because of such individual's race, color, religion, sex, or national origin"; second to require that "a person claiming to be aggrieved" must first resort to the Commission's processes; third, to insure that if the Commission finds reasonable cause, it will attempt to effect voluntary compliance by the employer; fourth, to provide that once the "person claiming to be aggrieved" satisfies the statutory requirement of affording the Commission the opportunity to perform its statutory function, he has the right to a judicial determination whether he has been the victim of a violation.

---

permission in writing, bring a civil action to obtain relief as provided in subsection (e)."

8. Under the Act this authority is given to the claimant, who may proceed with private or court-appointed counsel, and in certain circumstances, to the Attorney General who may intervene in cases of "general public importance." 42 U.S.C.A. § 2000e–5.

9. The circumstances of the case at bar point up the possibilities of sophisticated discrimination which may escape the perception of Commission personnel. This is not an allegation of discrimination based on race, color, or religion. Today there are highly skilled groups with superb staffs furnishing resource assistance in investigating and processing such claims through the Commission. This case alleges discrimination because of European ancestral origin, with apparently no religious overtones. The claimant is representative of a group technically within the pale of statutory protection, but a group not associated, in the popular view, as one which the legislation was designed to protect.

Accordingly, the judgment of the district court will be reversed and the cause remanded for further proceedings consistent with the views set forth in this opinion.