Sammie Lee McGRIFF, Vera Riddle, Hattie Witherspoon and Mrs. Adolphus Stewart, Plaintiffs,

v.

A. O. SMITH CORPORATION, Defendant.

Civ. A. No. 68–948.

United States District Court, D. South Carolina, Columbia Division.

Jan. 27, 1971.

---

Matthew J. Perry, Jenkins, Perry & Pride, Columbia, S. C., for plaintiffs.

Thomas C. Bradley, Jr., Erwin & Bradley, Spartanburg, S. C., for defendant.

## OPINION and ORDER

DONALD RUSSELL, District Judge.

■ The plaintiffs, suing on behalf of themselves individually and as representatives of the class of other employees similarly affected, seek relief for alleged violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C., Sec. 2000e–5) by the defendant-employer. The four plaintiffs filed individual complaints with the Equal Employment Opportunity Commission (hereafter called Commission) setting forth specific claims of racial discrimination against them within the terms of the Act. In addition, the plaintiff McGriff, in his original letter of complaint, stated a general charge of racial discrimination in defendant's employment policies.[1]

While these individual charges were being processed, Commissioner Jackson, also, filed against the defendant on December 6, 1966, a general charge of racial discrimination in its employment

1. McGriff's first complaint was in the form of an *unsworn* letter to the Commission. Dated May 18, 1966, it apparently was not received by the Commission until June 3, 1966. Later, on August 16, 1966, McGriff filed a formal, sworn "Charge of Discrimination", on which he set forth "what unfair thing was done" to him. His single charge in his sworn statement was that "Because of my race, I have been denied promotions for which I am fully qualified." This was also one of the two individual charges made by him in his orginal letter.

The Commission, in acting upon McGriff's complaint, did not relate its investigation to McGriff's subsequently sworn charge but, in its report identified the charges being considered as those set forth in McGriff's original letter, which included both an individual and a general charge of racial discrimination. The fact that McGriff's original letter-complaint was not "under oath" is not material since the Commission chose to act on and processed such letter, thereby waiving the requirement of an oath. See

Choate v. Caterpillar Tractor Company (7th Cir. 1968) 402 F.2d 357, 360:

"If the Commission undertakes to process a charge which is not 'under oath,' we perceive no reason why the district court should not treat the omission of the oath as a permissive waiver by the Commission. To deny relief under these circumstances would be a meaningless triumph of form over substance."

To the same effect: Antonopulos v. Aerojet-General · Corporation (D.C.Cal. 1968) 295 F.Supp. 1390, 1394, note 5. Actually, the scope of judicial inquiry seems to be fixed not so much by the strict language of the charge filed as by the breadth of the Commission's investigation, for, as the Court remarked in Sanchez v. Standard Brands, Inc. (5th Cir. 1970) 431 F.2d 455, 466: " * * * the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." See, also, Smith v. North American Rockwell Corp. (D.C.Okl.1970) 50 F.R.D. 515, 524.

policies and practices. This charge by the Commissioner seemingly grew out of the specific charges made by the plaintiffs, though it set forth the names of no employees against whom discrimination had been practiced.[2]

On September 26, 1968, the Commission filed its report of investigation on the charges filed by McGriff. In so doing, it dealt with the charges made by McGriff in his letter of May 18, 1966, rather than on the narrow, sworn charge filed by him on August 16. In this report, which was McGriff's "suit-letter", it stated, (1) that the general charge of racial discrimination made by McGriff would be ruled on in connection with its disposition of the general charge of discrimination made by Commissioner Jackson; (2) that the individual charges by McGriff of racial discrimination in denial of his right to promotions were untimely and thus without merit; and (3) finally, that there was "reasonable cause to believe" the defendant had "discriminated on the basis of race (Negro) by:

"1. harassing and threatening Charging Party McGriff in retaliation for opposing employment practices made unlawful by Title VII; * * *."

Shortly thereafter and prior to the commencement of this action, the defendant on October 15, 1968, entered into a Conciliation Agreement with the Commission, which purported to settle any claim of general racial discrimination in its employment policies and practices by the defendant. Such Agreement included this provision:

"3. The Charging Party hereby waives, releases and covenants not to sue the Repondent with respect to any

matters which were or might have been alleged as charges filed with the Equal Employment Opportunity Commission, subject to performance by the Respondent of the promises and representations contained herein."

The agreement was not executed or approved, so far as the present record shows, by McGriff.

The defendant, having filed undisputed evidence establishing the above facts, has moved to dismiss both the class action and the individual action of the plaintiff McGriff. It bases such motion on the contention that the Conciliation Agreement with the Commission settled finally and absolutely the general charge of discrimination which alone could provide a basis for a class action, that such Agreement settling the general charges necessarily and as shown in the report on McGriff's charges embraced the general charge in Plaintiff McGriff's letter of complaint, and that, since the individual complaint of McGriff based on his denial of promotion was dismissed by the Commission as untimely and the Conciliation Agreement settled his general charges, McGriff was without standing to maintain either an individual or a class action under Title VII on account of any matters stated in his letter of May 18, 1966. I do not agree.

■■ The argument of the defendant would invest the Commission and its action with greater power and effect than the Act creating the Commission authorizes. The Commission has no adjudicatory powers. Such jurisdiction has been expressly denied it. Its function is purely investigatory and conciliatory. By its rulings, it can neither clothe the claimant with a right to judicial relief nor can it create a bar to

2. See Bowaters Southern Paper Corp. v. Equal Employ. Op. Comm. (6th Cir. 1970) 428 F.2d 799, 800: " * * *

The Commissioner need not set forth the names of employees who have allegedly suffered discrimination, * * *."

claimant's right to such relief, for ultimate and final enforcement jurisdiction is vested in the courts. Jenkins v. United Gas Corporation (5th Cir. 1968) 400 F.2d 28, 32; [3] cf., Graniteville Co. v. Equal Employ. Op. Comm. (D.C.S.C. 1969) 316 F.Supp. 1177, 1185. Neither by its action nor inaction could it prejudice McGriff's substantive rights under the Act. See Miller v. International Paper Company (5th Cir. 1969) 408 F.2d 283, 291. Defendant's argument that the Commission's conclusions represent some form of *res judicata* thus overlooks the limited and restricted nature of the Commission's function and power. In short, the Commission was without any power to conclude the rights of the plaintiffs herein; and neither the Conciliation Agreement, to which, so far as the present record shows, McGriff did not agree, nor the so-called "ruling" of the Commission on McGriff's individual complaint represents any bar to the maintenance of either his class [4] or his individual suit. See Flowers v. Local No. 6, Laborers Internat'l U. of No. Amer. (7th Cir. 1970) 431 F.2d 205, 207; Fekete v. U. S. Steel Corporation (3d Cir. 1970) 424 F.2d 331, 334–336; Cox v. United States Gypsum Company (D.C.Ind.1968) 284 F.Supp. 74, 82–84, aff., as modified, 409 F.2d 289; Grimm v. Westinghouse Electric Corporation (D.C.Cal.1969) 300 F.Supp. 984, 988–991.

The inclusion in the Conciliation Agreement of a specific waiver and release of any matters within the range of the general charges does not alter this conclusion. See Flowers v. Local No. 6, *supra*, at p. 207 (431 F.2d); Grimm v. Westinghouse Electric Corp., *supra*, at p. 990 (300 F.Supp.).[5] This Agreement was, as the record now indicates, purely between the Commission and the defendant. Individual complainants were not parties to it. Yet, under the argument of the defendant such individual complainants would be bound by this Agreement, in the execution of which they did not participate and to which they did not agree. To give effect to such a provision—when not agreed to by the aggrieved complainant [6]—would be tantamount to conferring on the Commission an indirect power of adjudication. See Grimm v. Westinghouse Electric Corp., *supra*, at p. 989 (300 F.Supp.).

The defendant likens the Conciliation Agreement to an arbitration award under a collective bargaining agreement and argues that, as an arbitration proceedings represent an election of remedies barring subsequent relief under the Act, so the Conciliation Agreement should proscribe subsequent action in

---

3. See, for instance, *Jenkins, supra* (400 F.2d at pp. 31, 32):

 "Of course the legislative compromise changed the concept (of the EEOC under Title VII) from an enforcing-adjudicatory administrative agency to one in which the agency would conciliate, leaving the ultimate, final sanction to be judicial enforcement. As a part of the scheme such judicial enforcement was to be initiated by and at the hands of individual working grievants." To the same effect is Johnson v. Seaboard Air Line Railroad Company (4th Cir. 1968) 405 F.2d 645, 649–651.

4. On right to maintenance of a class action in proceedings of this character, see Oatis v. Crown-Zellerbach Corporation (5th Cir. 1968) 398 F.2d 496, 498–499.

5. In the *Grimm Case*, the Court said (p. 990, 300 F.Supp.):

 "The unavoidable thrust of the *Cox* holding is that a Commission determination of what constitutes compliance with 42 U.S.C. § 2000e et seq. is not binding on a grievant and does not bar the grievant from bringing a private suit if he disagrees with the Commission's determination. The *Cox* reasoning is consistent with the previously discussed statutory mandate that the private suit shall proceed de novo, and that Commission guidelines are not legally binding."

6. It should be noted that the Conciliation Agreement was intended to dispose of both the Commission's charges and of McGriff's general charge. Thus, this Agreement, to be effective against McGriff, required his agreement.

this Court under the Act. The weight of authority, however, does not support the conclusion that arbitration under a collective bargaining agreement will preclude either as an election of remedies or as *res judicata,* an action under Title VII. Hutchings v. United States Industries, Inc. (5th Cir. 1970) 428 F.2d 303, 314; Culpepper v. Reynolds Metals Company (5th Cir. 1970) 421 F.2d 888, 893; Bowe v. Colgate-Palmolive Company (7th Cir. 1969) 416 F.2d 711, 720; *contra,* Dewey v. Reynolds Metals Co. (6th Cir. 1970) 429 F.2d 324, 336; cf., Washington v. Aerojet-General Corporation (D.C.Cal.1968) 282 F.Supp. 517, 522–523.

It is clear, therefore, that the defendant's motion to dismiss the plaintiff McGriff's individual claim as asserted in his complaint must be overruled and McGriff is entitled to have his claim tried *de novo* in this Court. King v. Georgia Power Company (D.C.Ga.1968) 295 F.Supp. 943, 948.

■ The disposition of the class action, either as predicated in the Commissioner's charges or those of McGriff, is more complicated and difficult. Such action must satisfy the requirements of Rule 23. The first essential under that Rule is numerosity. While "No specified number is needed to maintain a class action under Fed.R.Civ.P. 23; * * *" or to meet the requirement of numerosity (Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 4th Cir. 1967, 375 F.2d 648, 653), and some Courts have been liberal in applying this requirement since, as it has been phrased, an action under Title VII "is perforce a sort of class action for fellow employees similarly situated" (Jenkins v. United Gas Corp., *supra,* 400 F.2d at p. 33), want of a class of sufficient numbers may require the dismissal of a class action under Title VII (Tippett v. Liggett & Myers Tobacco Company, D.C.N.C.1970, 316 F.Supp. 292, 298). Even more serious in connection with the instant class action are the Rule's

other requirements. To support a class action, there must be presented "questions of law or fact common to the class" and the claim of the representative party must be "typical of the claims or defenses of the class" and the representative party must be such as will "fairly and adequately protect the interests of the class". Rule 23(a), Federal Rules of Civil Procedure. In a number of cases from the Fifth Circuit, a generous view of the Rule in Title VII cases has been taken and the threat of "a racially discriminatory policy" has been stated to be "a question of fact common to all members of the class", permitting an "across the board" class action on behalf of an aggrieved employee or former employee who has alleged various specific acts of discrimination as well as a general company-wide policy of racial discrimination. Johnson v. Georgia Highway Express, Inc. (5th Cir. 1969) 417 F.2d 1122, 1124; Jenkins v. United Gas Corporation (5th Cir. 1968) 400 F. 2d 28, 33–34; Hall v. Werthan Bag Corporation (D.C.Tenn.1966) 251 F.Supp. 184, 186; Carr v. Conoco Plastics (D.C. Miss.1969) 295 F.Supp. 1281, 1289, a; United States v. Reese, 2 Cir., 432 F.2d 57. Such a generous approach, however, was sharply rejected in Hyatt v. United Aircraft Corp. (D.C.Conn.1970) 50 F.R. D. 242, 246–248. See, also, Smith v. North American Rockwell Corp., *supra,* at p. 525, 50 F.R.D.; Bradley v. Southern Pacific Co. (D.C.Tex.1970) 51 F.R. D. 14, 15; Burney v. North American Rockwell Corp. (D.C.Cal.1969) 302 F. Supp. 86, 90–91. As I view it, though, it is not necessary to resolve at this stage the right of the plaintiffs to maintain a class action. Assuming, without deciding, that on the facts alleged the plaintiffs may, under the authority of *Johnson,* maintain a class action, the question that would arise would be the nature of relief to which, in such class action, the plaintiffs would be entitled.

■ Generally, the only relief sought in a class action is injunctive.

In fact, a respectable line of authority suggests that injunctive relief is the sole remedy available in a class action under Title VII.[7] In this particular case, however, the need for injunctive relief is at best doubtful. The Conciliation Agreement obligates the defendant to the performance of every act of non-discrimination that might appropriately be incorporated in an injunction issued herein.[8] The successful negotiation of this Agreement accords with the purpose of Title VII. The whole idea of the Act was to give the discriminator "opportunity to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction." Hall v. Werthan Bag Corporation, *supra*, 251 F.Supp. at p. 188. By executing the Agreement, the defendant in this case has yielded to "soft words rather than the big stick of injunction". If, however, the employer's favorable response to "soft words" is to be incontinently followed by "the big stick of injunction" —without any showing of bad faith on the part of the employer and without any suggestion of a violation of the agreement by the employer—the very basis for the Commissioner's persuasions will be destroyed and the primary purpose of the Act frustrated. The issuance of an injunction, as authorized under Section 2000e–5(g), it would seem, is as much discretionary and subject to general equitable principles as the similar power under the Fair Labor Standards Act (29 U.S.C., sec. 217). Where there is no threat of continued violation of the latter Act by the employer and the good faith of his promise of observance is not questioned, the Courts have not hesitated to withhold injunctive relief in suits under that Act. Walling v. Clinchfield Coal Corporation (4th Cir. 1946) 159 F.2d 395, 399. Here, where the withholding of an injunction in deference to a voluntary agreement of compliance effected in the manner contemplated by Title VII harmonizes with the basic objective and goal of the law itself, it would seem even clearer that injunctive relief should be withheld. See Rosen v. Public Service Electric and Gas Company (3d Cir. 1969) 409 F.2d 775, 781, note 22; Hutchings v. United States Industries, Inc. (5th Cir. 1970) 428 F.2d 303, 314, note 10; Parham v. Southwestern Bell Tel. Co. (8th Cir. 1970) 433 F.2d 421, 429. Accordingly, even though the plaintiffs may not be barred from the maintenance of a class action seeking injunctive relief, on the undisputed facts as established by the exhibits offered by the defendant the right to injunctive relief herein will be denied unless the plaintiffs make some showing that the defendant is not observing in good faith its agreement with the Commission.

 If we assume that this action is maintainable as a class action and even though injunctive relief may not be in order, there would remain for consideration whether other employees of the defendant who may not have filed charges with the Commission but who may have suffered discrimination within the "periphery" of the charges filed by either the Commissioner or of the plaintiffs may secure individual relief in the form of reinstatement, promotion, back pay, etc., as incidental to the class action and what should be done to enable them to assert their rights herein. Despite some authorities to the contrary, the right of such non-exhausting grievants to secure such relief, if it be assumed that this is a proper class action, has been often rec-

---

7. See representative cases collected in Local 186, Int. Pulp, Sulphite & P.M.W. v. Minnesota M. & M. Co. (D.C.Ind. 1969) 304 F.Supp. 1284, 1289–1291.

8. Moreover, the Commission assumed, by the terms of the Agreement, the duty to police the observance of that Agreement by the defendant. It must be presumed it has done so.

ognized and upheld.[9] The reasoning behind this holding has been well stated in Bowe v. Colgate-Palmolive Co., *supra*, 416 F.2d at p. 720:

> "We are also unable to perceive any justification for treating such a suit as a class action for injunctive purposes, but not treat it so for purposes of other relief. The clear purpose of Title VII is to bring an end to the proscribed discriminatory practices and to make whole, in a pecuniary fashion, those who have suffered by it. To permit only injunctive relief in the class action would frustrate the implementation of the strong Congressional purpose expressed in the Civil Rights Act of 1964. To require that each employee file a charge with the EEOC and then join in the suit would have a deleterious effect on the purpose of the Act and impose an unnecessary hurdle to recovery for the wrong inflicted. * * *"

It is, of course, necessary that such non-exhausting grievants "assert the same or some of the issues" as the plaintiff bringing the original charge before the Commission and that they "must proceed * * * within the periphery of the issues which * * * (the representative plaintiff) could assert". Oatis v. Crown-Zellerbach Corporation, *supra*, 398 F.2d at p. 499; Local 186, Int. Pulp. Sulphite & P.M.W. v. Minnesota M. & M. Co., *supra*, 304 F.Supp. at p. 1292. It is the range of issues in the originating charges that fixes the class of employees entitled to seek individual relief as non-exhausting grievants.

Conceding, then, that a non-exhausting grievant who can identify as within the class aggrieved by the discrimination suffered by the representative plaintiffs may secure individualized relief in this action if it be deemed a class action, it is nonetheless incumbent upon such grievant to come forward and assert in this action his claim to individual relief. It is of the very nature of this action that "the individual must seek relief on his own * * * against the employer." Hutchings v. United States Industries, Inc., *supra*, 428 F.2d at p. 310. The responsibility for affirmative action thus rests on the individual claimant; it is not the responsibility of the Court to sift laboriously through all the records and circumstances in order to ferret out every possible grievant and adjudicate his or her rights under the Act. Any other conclusion would impose an intolerable burden on the Court. Since this class action, if maintainable, is under 23(a) and possibly 23(b) (2), no notice to possible claimants of their right to assert their claims herein would be required since any judgment entered herein would bind only those who are parties to this action. It is usual, however, to authorize some form of notice to possible claimants in a class action. See Hayes v. Seaboard Coast Line Railroad Company (D.C.Ga.1968) 46 F.R.D. 49, 55. This action has been pending for a considerable time; the Conciliation Agreement was executed in 1968; the alleged discrimination occurred in that year. As a result of the conclusions reached herein, discovery should promptly proceed, as soon as the time allowed for any complaints by the plaintiffs of a violation of the Conciliation Agreement has expired. All individual claims should be asserted before discovery be-

---

9. Oatis v. Crown-Zellerbach Corporation, *supra*, 398 F.2d at pp. 498–499; Bowe v. Colgate-Palmolive Company, *supra*, 416 F.2d at p. 721; Antonopulos v. Aerojet-General Corporation, *supra*, 295 F.Supp. at p. 1394; Local 186, Int. Pulp Sulphite & P.M.W. v. Minnesota M. & M. Co., *supra*, 304 F.Supp. at pp. 1286–1291; Grimm v. Westinghouse Electric Corporation, *supra*, 300 F.Supp. at p. 988; Butler v. Local No. 4 and Local No. 269, Laborers' Int. U. (D.C.Ill.1969) 308 F.Supp. 528, 533; Evans v. Local Union 2127, International Bro. of Electrical Wkrs. (D.C.Ga.1969) 313 F.Supp. 1354, 1363; Broussard v. Schlumberger Well Services (D.C.Tex.1970) 315 F. Supp. 506, 510.

gins. Any other ruling would mean either that defendant would be denied discovery in connection with the new claim or discovery would have to be re-opened for purposes of that claim. Unless there are especially compelling circumstances, that result should be avoided. To give extended notice now would necessarily require delaying discovery and delaying the disposition of a case that has already been too long delayed. For that reason, I shall not require any notice to possible additional claimants and shall, for the time-being, confine individual discovery to the claims of the plaintiffs and such additional claimants as may assert their claims within twenty (20) days from the date hereof. In the event such additional claims are asserted, the Court will determine finally whether the plaintiffs may proceed as a class action under Rule 23. Of course, if no such claimants intervene, it will be unnecessary to consider the right of the plaintiffs to maintain a class action by way of support for non-exhausting claimants.

One other motion should be disposed of. The plaintiffs have filed a large number of interrogatories. The defendant has filed objections to these, especially those that deal with the general charge of discrimination embraced within the Conciliation Agreement. Unless the plaintiffs show reason to believe that the defendant either has violated or threatens to violate the terms of the Agreement, the prayer for injunctive relief and the charge of general discrimination will be deemed moot and the only issue requiring judicial action will concern the individual claims of the plaintiffs and such appropriate nonexhausting claimants who have appeared and asserted their rights. The scope of the interrogatories will be accordingly limited at this time to such issues, though, on the basis of facts that may be developed during discovery, the plaintiffs may request a broadening of discovery.

And it is so ordered.