**Harrell ALEXANDER, Plaintiff,**

v.

**GARDNER–DENVER COMPANY, Defendant.**

**Civ. A. No. C–2476.**

United States District Court, D. Colorado.

July 7, 1971.

---

Henry V. Ellwood, III, Denver, Colo., for plaintiff.

Robert G. Good, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WINNER, District Judge.

Plaintiff's complaint charges a violation of Title VII of the Civil Rights Act. He says that he was discharged from his employment because "he was a member of the Negro race." After an arbitration held under a union contract (to be discussed later herein) he filed an appropriate complaint with the Equal Employment Opportunity Commission, and, on July 25, 1970, that Commission advised plaintiff that it found no probable cause for plaintiff's charge of discrimination. Enclosed with this advice was a form notifying plaintiff that he had 30 days within which to file suit in a United States District Court. On August 6, 1970, plaintiff filed in this Court, (1) an "Affidavit in support of Motion to Commence Action," and (2) a "Motion to Commence Action Without Payment of Fees and Costs." Acting on these ex parte documents, on August 6, 1970, Chief Judge Arraj entered an order permitting plaintiff to proceed in forma pauperis, appointing counsel for him and allowing 20 days within which to commence the action. The complaint in this Court was filed on August 25, 1970 [more than 30 days after the letter from

the EEOC but within the 20 days allowed by the Court]. The case is now before the Court on defendant's summary judgment motion.

■ Defendant first asserts that the Court is without jurisdiction because the complaint was not filed within 30 days of the finding of lack of probable cause by the Equal Employment Opportunity Commission. Ordinarily, the 30-day time limit is jurisdictional, Goodman v. City Products Corp. (6 Cir.) 425 F.2d 702; Cunningham v. Litton Industries, (9 Cir.) 413 F.2d 887. However, here the Court accepted the plaintiff's documents for filing, and allowed him 20 days within which to file a complaint. Under these circumstances, the Court believes that plaintiff has complied with the 30-day time limit and that defendant's jurisdictional attack on this ground must fail.

■ Defendant next says that the Court is without jurisdiction because the Commission did not find reasonable cause to believe that plaintiff's charge was true. This contention was disposed of by Judge Chilson in Brown v. Frontier Airlines, Inc., (D.C.Colo.) 305 F. Supp. 827, and, "We agree and hold that a finding by the Commission, that there is reasonable cause to believe that the charge is true, is not a jurisdictional requirement for the maintenance of an action brought pursuant to Section 2000e–5(e), and that the finding by the Commission in this case that the facts do not constitute a violation of the Act does not deprive this Court of jurisdiction to judicially determine the plaintiff's claim."

With these preliminary questions disposed of, we come to the vital and troublesome issue in the case. Pursuant to the collective bargaining agreement between defendant and its employees, before filing his charges with the Equal Employment Opportunity Commission, plaintiff lodged a grievance under the labor contract. That grievance was arbitrated to Mr. Don W. Sears, the Dean of the University of Colorado Law School. After an evidentiary hearing the arbitrator made written findings and concluded, "that the grievant was discharged for just cause. Consequently, his grievance is denied." The arbitrator's findings do not discuss plaintiff's present assertion of racial discrimination, but Alexander's deposition taken in this case acknowledges that this charge was before the arbitrator, and, on this motion for summary judgment, that deposition has been considered by the Court.

The present posture of the case, then, is that the Commission did not find probable cause that plaintiff's charge of discrimination was true, and, with that same charge of racial discrimination before him, the Dean of the University of Colorado Law School, sitting as an arbitrator, found against plaintiff and found that he was discharged for just cause. We must decide just how many chances plaintiff should be afforded to try to establish his claim of discrimination. We have already held that his failure to convince the Commission that there was probable cause for his charge does not bar a Title VII action in this Court, and we must now decide whether submitting the matter to arbitration under the labor contract requires the entry of a summary judgment in defendant's favor.

There are two diametric lines of authority. In Culpepper v. Reynolds Metals Company (1970) (5 Cir.) 421 F.2d 888, the employee filed a grievance under the union contract. He thereafter sought help from the Equal Employment Opportunity Commission, and the employer claimed that the short statute of limitations created by 42 U.S.C. 2000e–5 had run. The Court held that the statute was tolled by the union grievance procedure, and said:

"Racial discrimination in employment is one of the most deplorable forms of discrimination known to our society, for it deals not with just an individual's sharing in the 'outer benefits' of being an American citizen, but rather the ability to provide decently for one's family in a job or profession for which he qualifies and chooses. Title VII

of the 1964 Civil Rights Act provides us with a clear mandate from Congress that no longer will the United States tolerate this form of discrimination. It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute and a battle with semantics.

"This court has held many times that Title VII should receive a liberal construction while at all times bearing in mind that the central theme of Title VII is 'private settlement' as an effective end to employment discrimination. In Oatis v. Crown Zellerbach (5 Cir., 1968) 398 F.2d 496, this court held that:

" 'It is thus clear that there is *great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation.*'

"This view was again voiced in Jenkins v. United Gas Corporation (5 Cir., 1969) 400 F.2d 28, where this court stated that:

" ' * * * EEOC whose function is to effectuate the *Act's policy 'of voluntary conference, persuasion and conciliation as the principal tools of enforcement.*'

"It would, therefore, be an improper reading of the purpose of Title VII if we were to construe the statute as did the district court to permit the short statute of limitations to penalize a common employee, who, at no time resting on his rights, attempts first in good faith to reach a private settlement without litigation in the elimination of what he believes to be an unfair, as well as an unlawful, practice. We therefore, hold that the statute of limitations, which has been held to be a jurisdictional requirement, is tolled once an employee invokes his contractual grievance remedies in a constructive effort to seek a 'private settlement of his complaint.' Culpepper also sought to settle his complaint in 1963 through the grievance procedures. We do not think that

Congress intended for a result which would require an employee, thoroughly familiar with the rules of the shop, to proceed solely with his Title VII remedies for fear that he will waive these remedies if he follows the rules of the shop or to do both simultaneously, thereby frustrating the grievance procedure."

Hutchings v. United Industries, Inc. (1970) (5 Cir.) 428 F.2d 303, rules squarely that as a matter of public policy the federal courts cannot be divested of jurisdiction of a Title VII action by any arbitration procedure under a labor contract. Judge Ainsworth there ably sets forth the arguments in support of this view, and he points out that in a Title VII suit, the individual "takes on the mantle of the sovereign." The Court held that "the matters in dispute were subject to the concurrent jurisdiction of the federal courts under the scheme of Title VII and of the grievance-arbitration machinery established by the bargaining contract." It was held:

"In view of the dissimilarities between the contract grievance-arbitration process and the judicial process under Title VII, it would be fallacious to assume that an employee utilizing the grievance-arbitration machinery under the contract and also seeking a Title VII remedy in court is attempting to enforce a single right in two forums. We do not mean to imply that employer obligations having their origin in Title VII are not to be incorporated into the arbitral process. When possible they should be. See generally Gould, Labor Arbitration of Grievances Involving Racial Discrimination, 118 U.Pa.L.Rev. 40 (1969). But the arbitrator's determination under the contract has no effect upon the court's *power* to adjudicate a violation of Title VII rights.

" . . .

"Title VII outlaws certain forms of discrimination in employment. An important method for the fulfillment of congressional purpose is the utiliza-

tion of private grievance-arbitration procedures. This comports not only with the national labor policy favoring arbitration as the means for the final adjustment of labor disputes, e. g., Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, but also with the specific enforcement policy of Title VII that discrimination is better curtailed through voluntary compliance with the Act than through court orders. Congress, however, has made the federal judiciary, not the EEOC or the private arbitrator, the *final* arbiter of an individual's Title VII grievance. See Fekete v. United States Steel Corp., 3 Cir. 1970, 424 F.2d 331. The EEOC serves to encourage and effect voluntary compliance with Title VII. So also may the private arbitrator serve consistent with the scope of his authority. Neither, however, has the power to make the ultimate determination of Title VII rights.

"In this case, we conclude that the District Court erred in holding that Hutchings was bound by the arbitrator's adverse determination regarding the October denial of a promotion and by the settled 'third step' determination regarding the February denial. If the doctrine of election of remedies is applicable at all to Title VII cases, it applies only to the extent that the plaintiff is not entitled to duplicate relief in the private and public forums which would result in an unjust enrichment or windfall to him. Bowe v. Colgate-Palmolive Company, 7 Cir., 1969, 416 F.2d 711. Hutchings, of course, has received nothing to date. Since this case involves Hutching's assertion of his Title VII rights, while the grievance and arbitration proceedings involved his assertion of contract rights, res judicata is inapplicable to this proceeding."

At the opposite pole is Dewey v. Reynolds Metal Company (1970) (6 Cir.) 429 F.2d 324. There Judge Weick, speaking for a divided Court said:

"It is clear that if the arbitrator of the grievances had granted an award to Dewey, instead of to Reynolds, the award would have been final, binding and conclusive on Reynolds. Reynolds would not have been permitted to relitigate the award in the courts. This is the teaching of the United Steelworkers trilogy, which clearly defined the respective functions of the courts and the arbitrator. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 to 602, 80 S.Ct. 1343, to 1347, 4 L.Ed.2d 1403 to 1408, 363 U.S. 574 to 592, 80 S.Ct. 1347 to 1358, 4 L.Ed.2d 1409 to 1423, 363 U.S. 593 to 602, 80 S.Ct. 1358 to 1363, 4 L.Ed.2d 1424 to 1431 (1960); Washington v. Aerojet-General Corp., 282 F.Supp. 517 (C.D.Cal., 1968).

"In *Steelworkers,* the Court said:

 " 'When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal.' (Id. at 569, 80 S.Ct. at 1347)

"The arbitrator had jurisdiction to determine the grievances. The arbitration involved an interpretation of the collective bargaining agreement with respect to Dewey's claims that he had been laid off and discharged because of his religious beliefs. In arbitration proceedings, frequently questions of law and fact are resolved by the arbitrator. Where the grievances are based on an alleged civil rights violation, and the parties consent to arbitration by a mutually agreeable arbitrator, in our judgment the arbitrator has a right to finally determine them. Any other construction would bring about the result present in the instant case, namely, that the employer, but not the employee, is bound by the arbitration.

"This result could sound the death knell to arbitration of labor disputes, which has been so usefully employed in their settlement. Employers would

not be inclined to agree to arbitration clauses in collective bargaining agreements if they provide only a one-way street, i. e., that the awards are binding on them but not on their employees.

"The tremendous increase in civil rights litigation leads one to the belief that the Act will be used more frequently in labor disputes. Such use ought not to destroy the efficacy of arbitration.

"In the supplemental brief of EEOC as amicus curiae, the case of Smith v. Evening News Ass'n, 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), is cited for the proposition that 'the complainant is not required to elect between his contractual rights or his statutory rights but may seek to vindicate his claim in contractual and statutory proceedings.' (EEOC Supp. Brief, p. 3) The writer of the brief neglected to state that the collective bargaining agreement in *Evening News* contained no grievance arbitration procedure which had to be exhausted before recourse could be had to the courts. 371 U.S. 196, fn. 1, 83 S.Ct. 267.

"The question in our case is not whether arbitration and resort to the courts could be maintained at the same time; rather our case involves the question whether suit may be brought in court *after* the grievance has been finally adjudicated by arbitration.

"We see no good analogy between jurisdiction of the National Labor Relations Board and that of EEOC. The Labor Board has adjudicatory powers over unfair labor practices, subject only to judicial review. Orders of the Board may be vacated on review only when they are not supported by substantial evidence upon consideration of the record as a whole. EEOC, on the other hand, has no such power. The District Court considers EEOC cases do novo. The legislative history, from which we have previously quoted, indicates the reason for the difference.

"Nor do we find any national policy for ousting arbitrators of jurisdiction to finally determine grievances initiated by employees, based on alleged violation of their civil rights."

On rehearing, Judge Combs, who had filed the dissenting opinion, had resigned, and, with Judge McCree dissenting, Judge Weick added to his earlier opinion a discussion of *Culpepper, Hutchings, United Steelworkers Trilogy,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403, and *Boys Markets,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. He there said:

"The case of Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir. 1970), is relied on in support of the proposition that an employee may utilize both arbitration and an action under Title VII of the Civil Rights Act. In *Culpepper,* however, only a grievance was filed, which was never processed through arbitration. *Culpepper* involved racial discrimination, which a majority of the panel thought was so serious as to impose—

" ' * * * the duty on the courts to make sure that the Act works. * * *'

"Circuit Judge Coleman, who filed a concurring opinion, disagreed rather vigorously that any such duty was imposed on the Courts. He stated:

" 'Under our Constitutionally ordained form of Government, whether an Act works or fails is the concern of the Executive or Legislature, or both—not the courts.'

"We do not regard it as our function to enlarge on the plain language of a statute so as to impose on citizens obligations never intended by Congress, in order to make it work.

"Great reliance is placed upon Hutchings v. United Industries, Inc., 428 F.2d 303 (5th Cir. 1970), which was decided after our decision in the present case was announced. In our opinion Hutchings does not comport with Boys Markets, Inc. v. Retail Clerks

**1018**

Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

"In *Boys Markets,* Mr. Justice Brennan emphasized the importance of arbitration in the settlement of labor disputes. He said:

"'However, we have frequently noted, in such cases as *Lincoln Mills* [(Textile Workers Union of America v. Lincoln Mills of Alabama) 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972] the *Steelworkers* [363 U.S. 564, 80 S.Ct. 1343, 4 L. Ed.2d 1403] *Trilogy,* and *Lucas Flour* [(Local 174, Teamsters, Chauffeurs Warehousemen & Helpers of America v. Lucas Flour Company) 369 U.S. 95, 82 S.Ct. 571, 7 L. Ed.2d 593] the importance which Congress has attached generally to the voluntary settlement of labor disputes without resort to self-help and more particularly to arbitration as a means to this end. Indeed, it has been stated that *Lincoln Mills*, in its exposition of § 301(a), "went a long way towards making arbitration the central institution in the administration of collective bargaining contracts."

'The *Sinclair* [(Sinclair Refining Co. v. Atkinson) 370 U.S. 195, 82 S. Ct. 1328, 8 L.Ed.2d 440] decision, however, seriously undermined the effectiveness of the arbitration technique as a method peacefully to resolve industrial disputes without resort to strikes, lockouts, and similar devices. Clearly employers will be wary of assuming obligations to arbitrate specifically enforceable against them when no similarly efficacious remedy is available to enforce the concomitant undertaking of the union to refrain from striking.' [footnote omitted.]

"Similarly, employers would be wary of arbitration clauses in collective bargaining agreements if, as in the present case, the arbitration is binding on them only and not on their employees.

"Our case is even stronger than *Boys Markets* because the grievance here was submitted to arbitration and the arbitrator made an award which was final, binding and conclusive on the parties. It is as binding as a judgment. 5 Am.Jur.2d, Arbitration and Award, § 147. It remains in full force and effect.

"The amicus brief of NAACP Legal Defense Fund candidly recognizes that '[i]t may be true that the result of such an accommodation will be that the employer but not the employee will be bound by the decision of the arbitrator.' (Brief, p. 14).

"We know of no good reason why an award of an arbitrator should not be binding on both parties, the same as a judgment of a court.

"It is difficult for us to believe that any employer would ever agree to arbitration of a grievance if he knew that the employee would not be bound by the result.

"The importance of arbitration in the resolution of all labor disputes is the theme of the United Steel Workers Trilogy, 363 U.S. 564–602, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The purpose of arbitration is thwarted if the awards are held by the courts to be binding on employers only and not on employees."

Certiorari was granted in *Dewey,* but on June 1, 1971, the Supreme Court announced an affirmance of the case by an equally divided Court with Justice Harlan not participating. 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267.[1]

1. Other cases emphasizing the divergent views of the Courts on this question are: Bowe v. Colgate Palmolive Co. (1969) (7 Cir.) 416 F.2d 711; Younger v. Glamorgan Pipe and Foundry Co. (1969) (D.C. W.D.Va.) 310 F.Supp. 195; McGriff v. A. O. Smith Corp. (1971) (D.C.S.C.) 51 F.R.D. 479; Voutsis v. Union Carbide Co. (1971) (D.C.S.D.N.Y.) 321 F.Supp. 830; Washington v. Aerojet General Corp. (1968) (D.C.C.D.Calif.) 282 F. Supp. 517; Fekete v. U. S. Steel Corp. (1969) (D.C.W.D.Pa.) 300 F.Supp. 22; Newman v. Avco Corp. (1970) (D.C.M.D.

Faced with this dichotomy of authority, we adopt in their entirety the views of Judge Weick expressed in Dewey v. Reynolds Metals Company, supra. We hold that when an employee voluntarily submits a claim of discrimination to arbitration under a union contract grievance procedure—a submission which is binding on the employer no matter what the result—the employee is bound by the arbitration award just as is the employer. We cannot accept a philosophy which gives the employee two strings to his bow when the employer has only one. Congress has given the employee one and one-half strings under the Equal Employment Opportunity procedure. It is true that the Commission can enter no order binding on the employer, but with a finding of probable cause, reserving to the employee the right to sue, he is given the assistance of an agency of the United States Government in attempting to bring about a settlement of the claimed discrimination. This amounts to a half string.

In *Boys Markets*, Justice Brennan stressed the important public policy of promoting private, peaceful settlement of disputes between labor and management. To hold that an employee has a right to an arbitration of a grievance which is binding on an employer but is not binding on the employee—a trial balloon for the employee, but a moon shot for the employer—would sound the death knell for arbitration clauses in labor contracts. Such a result would bring to a tragic end the many years of effort which have brought about the now prevailing arbitration procedures to resolve labor disputes. The vital importance of the rights protected by the Civil Rights Act must not be overlooked, but it is the employee who elected arbitration. His was a voluntary choice, and he should be bound by it. The Constitution and Title VII demand equality; neither requires preferential treatment of minorities. Chief Justice Burger's opinion in Griggs

Tenn.) 313 F.Supp. 1069; Oubichon v. North American Rockwell Corp. (1970) (D.C.C.D.Calif.) 325 F.Supp. 1033, and

v. Duke Power Co. (1971) 401. U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 can be read in no other way.

Defendant's motion for summary judgment is granted.

cases cited in *Culpepper*, *Hutchings* and *Dewey*.