October 20, 1977

# 77–61 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

## President's Authority To Promulgate a Reorganization Plan Involving the Equal Employment Opportunity Commission

This is in response to your request for the opinion of this Office on two questions pertaining to the President's authority to promulgate a reorganization plan involving the Equal Employment Opportunity Commission (EEOC). You have asked, first, whether EEOC is an Agency in the executive branch so as to come within the President's authority under the Reorganization Act of 1977; second, whether a reorganization plan can vest in EEOC functions which are presently lodged in the Department of Labor. For the reasons that follow, we answer the first question in the affirmative; your second question may also be answered in the affirmative, provided certain other conditions of the Reorganization Act of 1977 are met.

### EEOC as an Executive Branch Agency

Under the current Reorganization Act, the President may provide for the transfer of functions only for present purposes, with respect to "an Executive agency or part thereof." *See* 5 U.S.C.A. §§ 902–3 (1977). One prerequisite of a transfer of functions to EEOC is thus a determination that the agency is an "Executive agency." We believe that there is little doubt that it is such an "Executive agency."

This result can be reached by two different rationales. First, even the so-called independent regulatory agencies have been considered "Executive" agencies for purposes of the Reorganization Acts. For example, even though previous such Acts have provided that reorganization plans could pertain only to agencies "in the executive branch of the Government," *see* Reorganization Act of 1949, §7, 63 Stat. 203, reorganization plans have been proposed by the President, and allowed by Congress, which involved the independent regulatory commissions. *See* Reorganization Plan No. 3 of 1961, 75 Stat. 837 (CAB); Reorganization Plan No. 4 of 1961, 75 Stat. 838 (FTC). The fact that EEOC would

similarly come within the present Reorganization Act is demonstrated by a provision, enacted in 1972 with reference to a Reorganization Act containing provisions similar to those pertinent here, which indicated that a statutory transfer of functions to EEOC could be aborted by a reorganization plan. Equal Employment Act of 1972, Pub. L. No. 92–261, § 5, 86 Stat. 107, 42 U.S.C. (Supp. V) § 2000e–6(c).

Under this rationale, however, a reorganization plan affecting the EEOC could still be subject to certain restrictions if the EEOC were deemed to be an "independent regulatory agency." *See* 5 U.S.C.A. § 905(a)(1). We do not believe this to be the case. EEOC was created by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–4 *et seq.* Its five members are appointed by the President with the advice and consent of the Senate, to staggered 5-year terms; no provision is made for the removal of the members from office. EEOC's functions, as contemplated in the 1964 Civil Rights Act, were largely to investigate and to conciliate.[1] *See* 110 Cong. Rec. 7242 (1964) (remarks of Senator Case); *see, also, McGriff* v. *A. O. Smith Corporation,* 51 F.R.D. 479, 482–83 (D.S. Car. 1971). Congress clearly intended that EEOC should not be vested with any power to adjudicate or to issue enforcement orders. *See* 110 Cong. Rec. 6543 (1964) (remarks of Senator Humphrey); *Fekete* v. *United States Steel Corporation,* 424 F. 2d 331, 336 (3rd Cir. 1970). Moreover, while EEOC is empowered to issue guidelines, they are not regarded as regulations having the force of law. *See, General Electric Company* v. *Gilbert,* 97 S. Ct. 401, 410–11 (1976).

The lack of any quasi-adjudicatory or quasi-legislative functions vested in EEOC leads, in our view, to a conclusion that it is a part of the executive branch. As the Supreme Court indicated in *Humphrey's Executor* v. *United States,* 295 U.S. 602, 624 (1935), and *Wiener* v. *United States,* 357 U.S. 349, 353–354 (1958), the inferences to be drawn as to congressional intent on this matter rest largely on the functions that the Agency is to perform. In those cases the quasi-legislative or quasi-judicial functions lodged by Congress in the particular agencies led to a conclusion by the Court that Congress meant for the agencies to be independent; otherwise, the agencies could not perform their required duties free of Executive influence. The lack of such functions in EEOC and the consequent absence of any need to be independent of the Executive suggests that Congress meant for EEOC to be subject to Executive control.

Other considerations support this result. First, it would raise serious constitutional problems for an agency, shorn of any quasi-judicial or quasi-legislative authority, to be set apart from the Executive; it cannot be assumed that Congress would lightly intend such a result. Moreover, there is no provision in the 1964 Civil Rights Act for the removal of EEOC members for neglect of duty or malfeasance in office. Such a

---

[1] In 1972 Congress expanded EEOC's powers by allowing it to bring certain enforcement actions. *See* 42 U.S.C. (Supp. V) § 2000e–5.

provision has been customarily included in statutes setting up regulatory agencies intended to be independent of Executive control, *See, e.g.,* 29 U.S.C. § 153(a) (NLRB); 49 U.S.C. § 1321(a)(2)(CAB), except for those statutes passed in the interval between *Myers* v. *United States,* 272 U.S. 52 (1926), and *Humphrey, see* 15 U.S.C. 78d (SEC); 47 U.S.C. 154 (FCC). While *Wiener* v. *United States, supra,* held that the absence of a specific provision for removal for cause does not necessarily imply that the officer is subject to Executive control, the fact that such a provision is not contained in Title VII of the Civil Rights Act seriously weakens that argument when compared to the statutes creating other regulatory agencies.

The legislative history of the 1964 Civil Rights Act does not suggest a contrary result. Albeit, there are references in the history which could be taken to indicate a legislative belief that EEOC was to be an independent Agency. For example, the House committee report states that the "Commission will receive the usual salaries of members of independent regulatory agencies." H.R. Rep. No. 914, 88th Cong., 1st Sess. 28 (1963). Senator Humphrey also stated that the EEOC statute would be a "departure from the usual statutory scheme for independent regulatory agencies." 110 Cong. Rec. 6548 (1964). These limited remarks, however, do not shed any additional light on an intent that EEOC was to be an independent Agency. If Congress had intended this result, it presumably would have so indicated more clearly and explicitly, particularly since it must have been aware that the "most reliable factor" for drawing inferences as to independence—that of the agency's functions—would lead to a contrary conclusion. *Wiener* v. *United States, supra,* at 353. In addition, it is not without significance that those opposed to the Civil Rights Act referred, without rebuttal, to EEOC as part of the executive branch. *See* 110 Cong. Rec. 7561, 7776, 8442 (1964) (remarks of Senators Thurmond, Tower, and Hill).

We thus conclude that EEOC is an Agency within the executive branch. This conclusion is consistent with earlier opinions of this Office as to the status of EEOC.

### Transfer of Functions from the Department of Labor

The conclusion that EEOC is subject to the President's authority under the Reorganization Act of 1977 is not the only condition for a transfer of functions from the Department of Labor to EEOC. One other prerequisite is that the Department of Labor must be an Executive agency—which, of course, it is. Two other general substantive limitations must also be met before a transfer of functions can be accomplished. First, the President must find that changes in the organization of agencies are necessary to carry out the policies set forth in 5 U.S.C. § 901(a); this is not so much a legal determination as it is a practical one. Second, a reorganization plan may not transgress the limitations set forth in 5 U.S.C. § 905. While some legal issues may be

presented here, they can properly be analyzed only in light of the particular changes which are proposed. If you desire further advice on this matter, we will be happy to evaluate any plan's conformance to the provisions in 5 U.S.C. § 905.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
